**UNITED STATES of America**

v.

**Gary J. BUENDO, Alan R. Tetrault, John T. Bulecza, Louis P. Rossetti, and Richard M. Penta.**

**Crim. No. 88–0039–F.**

United States District Court, D. Massachusetts.

Dec. 27, 1988.

938

George Kelly, Ryan & White, Springfield, Mass., for Bulecza.

Robert Astor, Springfield, Mass., for Rossetti.

Frances Robinson, Springfield, Mass., for Penta.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

On October 14, 1988, a United States magistrate issued a Memorandum and Order requiring that the government disclose to defendants *"all* exculpatory evidence, including impeachment material, no later than seven (7) days from receipt of [the] memorandum." This decision was based on the Magistrate's interpretation of Local Rule 42(a)(5) of the Local Rules of the United States District Court for the District of Massachusetts ("L.R."). The Magistrate further ordered the government to comply with his interpretation of another section of the same Local Rule mandating the government to disclose "promises, rewards or inducements" given to any of the witnesses. The Magistrate concluded that L.R. 42(a)(7) requires the government to disclose "any statement to any witness against a particular defendant to the effect that the Government did not intend to prosecute him, that he was not the subject of the investigation, that he had a minor role, or the like, and any letter agreements and offers to enter into a plea agreement." Magistrate's October 14, 1988 Memorandum and Order at 12. The government now moves for reconsideration pursuant to 28 U.S.C. § 636(b)(1)(A) alleging the Magistrate's decisions were contrary to law. For reasons explained below, the Court will reverse the first and modify the second of the Magistrate's decisions.

## I. DISCUSSION

Don O. Burley, Office of Consumer Litigation, Washington, D.C., for U.S.

Henry L. Rigali, Springfield, Mass., for Buendo.

Judd Carhart, Springfield, Mass., for Tetrault.

A. *Local Rule 42(a)(5)*

Local Rule 42(a)(5) provides:

In all criminal cases, the following material and information in the possession, custody or control of the parties, the existence of which is known, or by the

exercise of due diligence may become known, to the attorneys for the parties, shall be disclosed to the opposing party.

Such disclosure will be routine and automatic, i.e., without any court order in the particular case. It shall occur as soon as counsels' trial engagements permit and in all events within fourteen (14) days after arraignment.

(a) The Government shall disclose, and allow the defendant to inspect, copy and photograph, all written material as follows:

. . . .

(5) All exculpatory evidence within the meaning of *Giles v. Maryland*, 386 U.S. 66 [87 S.Ct. 793, 17 L.Ed.2d 737] (1967) and *Brady v. Maryland*, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963).

The defendants argue, and the Magistrate ultimately agreed, that because the Supreme Court and First Circuit have written that impeaching evidence is *Brady* material, this Local Rule requires early disclosure of evidence the government has which may affect the credibility of its own witnesses at trial, in addition to traditional *Brady* evidence. Finding insufficient support for this interpretation of Local Rule 42, this Court disagrees.

As the government points out, if the drafters of L.R. 42 wished to extend the government's pretrial automatic discovery responsibilities to include impeachment material, it would have so stated, or at least have cited *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Instead, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), are cited in the Rule. Both of these cases involved customary exculpatory evidence.[1]

*Brady* was a murder case wherein, after petitioner was found guilty, defense counsel came across a codefendant's statement admitting that that codefendant actually committed the murder. The prosecutor had this information before trial, but suppressed it. Addressing the prosecutor's failure to disclose the information to the defendant, the Court held: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* 373 U.S. at 87, 83 S.Ct. at 1196.

*Giles* is a peculiar case involving the rape of a sixteen-year old girl for which three men were convicted. After the trial, defense counsel learned of the existence of evidence the prosecutor had in his possession which, in all likelihood, would have dramatically affected the credibility of the victim's testimony. This testimony was crucial to the convictions. Also, during the appellate process, two police reports came to light in which the victim was quoted as having stated, in effect, that one of the three men did not rape her. *Id.* 386 U.S. at 74-7, 87 S.Ct. at 797-9.

The Supreme Court was unable to reach a majority decision in *Giles*. A plurality of the Court wrote, "Thus the case presents the broad questions whether the prosecution's constitutional duty to disclose extends to all evidence admissible and useful to the defense, and the degree of prejudice which must be shown to make necessary a new trial." *Id.* at 73-4, 87 S.Ct. at 796-7. For procedural reasons, however, the Court found it unnecessary to resolve these constitutional questions. Instead, in a 5-4 decision, three of the justices subscribing to the plurality decision ordered the case remanded with instructions for the state appellate court to consider the above-mentioned police reports. *Id.* at 81, 87 S.Ct. at 800. In describing the police reports, Justice Brennan, writing for the plurality, held, "The contents of the report thus go, not only to the credibility of the State's witnesses, but also to the issue at trial whether John Giles had raped the girl." *Id.* at 77, 87 S.Ct. at 798. This statement is important to the present case because it implies that not only was the information useful for impeachment purposes, but also

---

1. One source defines the word exculpate: "To clear of a charge; prove guiltless or blameless; exonerate." The American Heritage Dictionary 458 (New College Ed.1976).

that it was material to the guilt or innocence of the defendant or, in other words, classic exculpatory evidence.

It is difficult to characterize the actual holding of *Giles*. Yet, insofar as is relevant to the case at bar and L.R. 42, the impeachment evidence upon which the plurality relied in remanding rose to the level of traditional exculpatory evidence due to the fact that the police reports raised a serious question as to whether the defendant actually raped the girl.

In contrast to *Brady* and *Giles* is the later Supreme Court case of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), wherein the Court unanimously held, in no uncertain terms, that the prosecution has a duty to disclose evidence likely to affect a key governmental witness' credibility. The evidence at issue in *Giglio* was a promise, made by an assistant United States attorney, that the witness would not be prosecuted if he cooperated with the government. *Id.* at 152, 92 S.Ct. at 765. This is quintessential impeachment evidence.

As the government persuasively argues, if the promulgators of L.R. 42 sought to include impeachment evidence within the automatic discovery rule, then it would have cited *Giglio*. Limiting the list of citations to *Brady* and *Giles* is an indication that L.R. 42(a)(5) does not encompass impeachment evidence.[2]

Additionally, reading L.R. 42(a)(5) as including impeachment evidence would render another part of the same rule unnecessary and, indeed, redundant. L.R. 42(a)(7) states:

... (a) The government shall disclose, and allow the defendant to inspect, copy and photograph, all written material as follows:

. . . .

(7) If any promises, rewards, or inducements have been given to any witnesses, a written statement of any such promises, rewards or inducements.

There can be no doubt that promises, rewards or inducements are impeachment evidence. *See Giglio*, 405 U.S. at 154–55, 92 S.Ct. at 766 (prosecutor's promise not to prosecute witness is impeachment material). If L.R. 42(a)(5) was meant to require the government to disclose all impeachment evidence, then there would be no need for L.R. 42(a)(7).

A practical consequence of the Magistrate's decision would be that, by releasing impeachment material, the government would be required, in effect, to disclose the names or identities of its witnesses fourteen days after arraignment. This result is one which was expressly rejected by Congress when it amended the Federal Rules of Criminal Procedure. *See* H.R.Conf.Rep. No. 94–414, 94th Cong., 1st Sess. 1975 U.S. Cong. & Admin.News 674, 716 (not in best interest of justice to require government or defendant to reveal names of witnesses before trial); *see also* L.R. 3(a) ("These rules shall be construed consistently with other applicable statutes and rules, and to secure the just, efficient determination of all proceedings before the court.").

In sum, it is beyond doubt that the government must disclose impeachment material to the defendant at some point before or during trial. This Court merely holds that L.R. 42(a)(5) does not require the government to disclose impeachment material within fourteen days after arraignment, unless such material rises to the level of being exculpatory, that is, evidence which is material to the guilt or innocence of the defendant.

### B. *Local Rule 42(a)(7)*

In its entirety, L.R. 42(a)(7) states:

---

**2.** While it is true that both the Supreme Court and First Circuit have held that impeachment evidence is *Brady* material, *see United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *United States v. Ingraldi*, 793 F.2d 408, 411 (1st Cir.1986), it does not necessarily follow that Local Rule 42 meant to include impeachment material as part of the government's responsibility fourteen days after

arraignment to disclose to defendants all exculpatory evidence. Rather, these courts' identification of impeachment evidence as *Brady* material merely clarify the types of evidence the government must disclose to defendants *at some time*. Nothing in these cases or others cited by counsel dictate *when* that responsibility is triggered.

In all criminal cases, the following material and information in the possession, custody or control of the parties, the existence of which is known, or by the exercise of due diligence may become known, to the attorneys for the parties, shall be disclosed to the opposing party. Such disclosure will be routine and automatic, i.e., without any court order in the particular case. It shall occur as soon as counsels' trial engagements permit and in all events within fourteen (14) days after arraignment.

(a) The Government shall disclose, and allow the defendant to inspect, copy and photograph, all written material as follows:

. . . .

(7) If any promises, rewards, or inducements have been given to any witnesses, a written statement of any such promises, rewards or inducements.

A dispute arose in this case over the meaning of "inducement" as used in the Local Rule. The government takes the position that "a promise, reward or inducement must involve an agreement, a quid pro quo, such as a financial payment, a confirmed plea agreement, an agreement by the Government not to prosecute or to recommend a lesser sentence or an agreement to place a witness in a witness protection program." Defendants, on the other hand, maintain that the word inducement should be given its common everyday meaning, which is obviously far broader than the government's interpretation. In defendants' eyes, anything said to a witness which may have encouraged them to cooperate would be an inducement under the rule.

In attempting to determine if any inducements were made in the present case, the Magistrate ordered the government to provide for *in camera* review a specific list of all representations it made to its witnesses. In his memorandum, the Magistrate wrote, "The long list of witnesses submitted *in camera* includes persons who were told [1] that it was in their "best interest" to cooperate, [2] that they were not targets of the investigation in light of their minor roles,

[3] that there was no intent on the part of the Government to prosecute them, [4] that the Government was interested in their cooperation, [5] that the Government considered that the witness had a "low level involvement," and [6] that it was not the Government's intention to prosecute him." Also, the government apparently had made outstanding plea agreement offers which at the time of the Magistrate's order were neither accepted nor finalized.

After a well-reasoned analysis on the probable intent of the drafters of L.R. 42(a)(7), the Magistrate concluded that each of the above statements constitute inducements. The Magistrate wrote:

A statement to a witness that he or she has a minor role and is not a subject for investigation or a target for potential prosecution is obviously an inducement, and equally obviously *intended* to be an inducement, to cooperate and give testimony. This construction of the term "inducement" may, in some cases, complicate the investigative process somewhat for the Government. On the other hand, any other interpretation of the term would do violence both to the English language and to the manifestly inferable intent of the rulemakers [sic]. It is simply impossible to imagine how a statement that a particular person is not the subject of an investigation or a potential defendant—even when accompanied by language indicating that this statement in no way constitutes a promise—could be anything other than a crucial motivating consideration for the potential witness. Moreover, such information would be highly useful to defense counsel and would clearly be brought out on cross-examination as tending to impeach the witness.

Magistrate's October 14, 1988 Memorandum and Order at 11–12 (emphasis in original). Accordingly, the Magistrate ordered the government to disclose to defendants all of the above-quoted statements made to witnesses as well as outstanding plea agreement offers.

The government now objects to the Magistrate's decision on this issue, alleging that

his interpretation of the word inducement was never one intended by the drafters of the Local Rule.

Aside from the Magistrate's memorandum, this Court's opinion on the meaning of inducement in L.R. 42(a)(7) is written on a clean slate. Nothing in the Federal Rules of Criminal Procedure, in decisions of the First Circuit or United States District Court for the District of Massachusetts, or in any local rule in other federal judicial districts, provides guidance on the matter. L.R. 42 appears to be truly unique to this district.

■ To begin with, the Court shares the Magistrate's belief that, unlike promises and rewards, the word inducement is difficult to define as it is used in Local Rule 42. A promise is "a declaration assuring that one will or will not do something; [a] vow" and a reward is "something given or received in recompense for worthy behavior." The American Heritage Dictionary at 1047, 1113 (New College Ed.1976). Both promises and rewards are thus easily identified. Either there was a declaration assuring the government would do something or there was not; there was a reward given to a witness, or there was not. But inducements escape such facile identification. A statement by a law enforcement officer to a prospective witness such as "any good citizen would not hesitate to cooperate with the police" may, technically speaking, be viewed as an inducement. Yet, this cannot be the type of inducement which falls within the automatic discovery rule. To induce someone is to "lead or move by influence or persuasion; to prevail upon." *Id.* at 671. This definition indicates that, to be an inducement, some type of cognizable effort by the government must be made to convince a witness to cooperate.

The Magistrate concluded that even statements of status (i.e., "You are a low level player in the conspiracy.") constitute inducements within L.R. 42(a)(7). Such cannot be the case. There is no indication that the drafters of Local Rule 42 intended to radically alter pretrial criminal discovery practice in Massachusetts. To the contrary, the Local Rules became effective on July 1, 1986 and, with respect to criminal discovery practices, were an attempt to require parties to engage in the usual methods of pretrial discovery without court supervision. While it is apparently true that no other court has a local rule like Local Rule 42, this Court believes that the Magistrate's interpretation is too broad.

■ After due consideration, the Court holds that to fall within the automatic discovery provisions in Local Rule 42(a)(7), an inducement requires a more substantial commitment by the government than a statement merely informing a witness of their posture in an investigation or case. Rather, an inducement for purposes of Local Rule 42(a)(7) is a statement, written or oral, which reasonably implies that the government—through an assistant United States attorney or law enforcement officer—is likely to confer or withhold future advantages to a prospective witness depending on that witness' cooperation in an investigation or case. Admittedly, this definition does not resolve the various nuances which will invariably arise in future criminal cases.[3]

■ It should be clear from this definition that statements like the ones numbered two through six above ( [2] that they were not targets of the investigation in light of their minor roles, [3] that there was no intent on the part of the Government to prosecute them, [4] that the Government was interested in their cooperation, [5] that the Government considered that the witness had a "low level involvement," and [6] that it was not the Government's intention to prosecute him) merely inform the wit-

---

**3.** For example, a statement made by an assistant United States attorney to the effect that the government has no plans to indict that witness "at this time" may or may not be an inducement. That is, if one interprets the phrase "at this time" as a subtle threat, the statement would be an inducement. Yet, if there is an independent investigation regarding the criminal wrongdoing of that witness, having nothing to do with that person's potential cooperation, the statement would not be an inducement. The statements made to witnesses in the case at bar present no such ambiguities.

ness of their status and do not imply that the witnesses are likely to receive benefits for their cooperation. These statements, therefore, do not fall within the ambit of the automatic discovery rule. Yet, the statement made by the government to a witness that "it was in their 'best interest' to cooperate" surely is one implying that the government is likely to extend a benefit to the witness in return for their cooperation, even though no agreement or "quid pro quo" was reached. This statement and others like it do fall within Local Rule 42(a)(7) requiring the government to disclose it within fourteen days after arraignment. Similarly, outstanding plea offers in most all cases constitute an inducement.

Interpreting the word inducement in this manner strikes a pragmatic balance between the government's restricted, and the defendants' broad, positions. The government's assertion—that an inducement requires an actual agreement—tortures the English meaning of the word and, if this circumscribed definition were accepted, would render the term a nullity in the Local Rule due to the fact that an inducement reaching the level of an agreement is certainly a promise. Defendants' proclaimed meaning of inducement is equally untenable. If every statement which could possibly be characterized as a "consideration" taken into account by a witness in contemplating cooperation with the government had to be disclosed within fourteen days of arraignment, virtually all of the government's witnesses would inevitably be revealed, expressly or by deduction. As the Magistrate points out, and as stated earlier in this Memorandum and Order, forcing parties to reveal witnesses at a criminal trial was rejected by Congress. *See supra* p. 6; 1974 Conf.Comm.Notes to Fed.R. Crim.P. 16. Moreover, this result would be contrary to L.R. 3(a) which states: "These rules shall be construed consistently with other applicable statutes and rules, and to secure the just, efficient determination of all proceedings before the court."

Finally, in terms of the value of such information before trial, knowledge within fourteen days of arraignment that the government told a witness he was not a target, for example, would do little for a defendant. Yet, knowing that the government told a witness it was "in their best interest to cooperate," may be quite useful to a defendant who may himself be contemplating cooperating with the government or in the process of formulating a defense.

The bottom line is that the Court's interpretation of an inducement as used in Local Rule 42 is a practical one. Wholesale pretrial disclosure is rejected as unnecessary and unintended, while statements made by government officials containing subtle threats must be disclosed within the automatic discovery rule even if accompanied by language that no firm promises are being made. For purposes of this Memorandum and Order, the Court holds that the Magistrate erred in interpreting "inducement."

## II. CONCLUSION

For reasons stated above, the Court REVERSES the Magistrate's October 14, 1988 Order holding that impeachment evidence falls within L.R. 42(a)(5), and AFFIRMS in part and REVERSES in part the Magistrate's Order interpreting L.R. 42(a)(7). The case is REMANDED to the Magistrate for further action consistent with this Order.

It is So Ordered.