## Commonwealth *vs.* David Jackson.

Suffolk. October 6, 1998. - December 10, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Fried, & Marshall, JJ.

*Homicide. Practice, Criminal,* Conduct of prosecutor, Argument by prosecutor, Comment by judge, Assistance of counsel, Duplicative convictions, Admissions and confessions. *Evidence,* Credibility of witness, Prior misconduct, Pattern of conduct, Photograph, Relevancy and materiality.

A criminal defendant's claim that the prosecutor improperly bolstered the credibility of a critical witness was not supported by any evidence that the prosecutor falsely stated to the jury that no inducement had been offered for the witness's testimony. [458-459]

A criminal defendant's claim that the prosecutor concealed from the jury the fact that the Commonwealth did not intend to prosecute a critical witness would not, even if proved true, have supported the defendant's claim that the concealment improperly bolstered the witness's credibility. [459]

At the trial of a burglary indictment, the judge correctly admitted evidence of the defendant's other similar admitted criminal activity as evidence of modus operandi, and there were sufficient indicia of reliability to justify admitting the evidence of the prior bad act. [459-460]

At a criminal trial, prejudice, if any, resulting from the prosecutor's remarks that may have been outside the permissible scope of closing argument was adequately cured by the judge's instructions to the jury. [460-461]

At a murder trial, there was no error in the prosecutor's remark in closing argument commenting on the witnesses' reasonable fear in testifying against the defendant. [461]

At a murder trial, prejudice, if any, resulting from the prosecutor's improper argument tending to shift to the defendant the burden of showing the existence of inducements for witnesses' testimony was de minimis, where defense counsel conceded the absence of any such inducements and the judge gave a specific curative instruction. [461-462]

At the trial of a criminal case, the prosecutor's comment to the jury that the Commonwealth witnesses were not on trial was not improper [462-463], and his repetition of certain testimony did not improperly inject the prosecutor's opinion of the credibility of a certain witness [463].

At a murder trial, the prosecutor's comments on defense tactics observed by the jury were permissible; however, his reference to defense counsel as a "clever lawyer" would best have been omitted. [463-464]

At a murder trial, the probative value of certain relevant photographs of the crime scene and autopsy was not overwhelmed by the photographs' inflammatory potential, and the judge was not required to give a limiting instruction. [464-465]

At a murder trial, the judge's comment, as he prevented defense counsel from pursuing an improper line of questioning, that the prosecution witness was "not on trial here," did not constitute an improper vouching for the witness's credibility. [465-466]

At a murder trial, no reasonable juror could have interpreted as an admission of guilt a statement of defense counsel in closing argument. [466]

At the trial of an indictment for armed robbery, sufficient evidence corroborated the defendant's confession that, armed with a shotgun, he broke into the victim's apartment and stole items. [466-467]

Where the jury in a murder case returned a verdict of guilty of murder in the first degree on both a felony-murder theory (with armed robbery and breaking and entering a dwelling in the nighttime as the underlying felonies) and a theory of deliberate premeditation, the underlying felonies were separate and distinct crimes and were not duplicative. [467]

INDICTMENTS found and returned in the Superior Court Department on March 13, 1992.

The cases were tried before *James D. McDaniel, Jr.*, J., and a motion for a new trial, filed on August 30, 1996, was heard by him.

*Esther J. Horwich* for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.

FRIED, J. The defendant, David Jackson, was convicted of murder in the first degree, based on both deliberate premeditation and felony-murder, as well as armed robbery and burglary. We affirm the convictions and decline to exercise our power under G. L. c. 278, § 33E, to order a new trial or reduce the murder verdict. We also affirm the denial of the defendant's motion for a new trial.

I

On the evening of April 16, 1990, Steven Olbinsky received a call from his friend, Mark James. James asked Olbinsky whether he knew where to buy drugs. Olbinsky responded that he knew of a place, and James, along with two others (the defendant and an unidentified man), came to pick Olbinsky up at his home.

Olbinsky directed them to a location at which he had previously purchased drugs. The group arrived some time after 9 P.M., and Olbinsky, James, and the defendant got out of the car.

Olbinsky then observed the defendant produce and load a shotgun. On seeing this, Olbinsky said to the defendant, "What the hell are you doing? I'm out of here." Frightened, Olbinsky told the others that his drug source was in apartment 3-A, although the apartment from which he had previously purchased drugs was apartment 1-A. Olbinsky then left the scene and, as he was leaving, he observed the defendant and James prying open the front door of the building with a screwdriver.

At approximately 11 P.M., two black men broke into apartment 3-A. One was wearing a long dark jacket and a stocking mask and was carrying a sawed-off shotgun; the other was wearing glasses and carrying a screwdriver. The men demanded drugs and money and, when these were not provided, stole a tape recorder and led one of the apartment's occupants, Ferdy Herrara, out of the apartment at gunpoint.

Herrara indicated to the intruders that the apartment they were seeking was downstairs and, moments later, the two men kicked open the door to apartment 1-A, which was occupied by Franio Lara and his son, Arcadio. Within ten or fifteen seconds of their arrival, the gunman fired the shotgun at Arcadio, killing him.

Later that evening the defendant and James arrived at the apartment of Janie Vick and Robert Lee Perkins, Jr. The defendant wore a long jacket and was carrying a shotgun, money, cocaine, and jewelry. The defendant and James accompanied Perkins into his bedroom and told him that someone named Steve had directed them to an apartment building and that once there they had committed a robbery. The defendant added that, as he and James were preparing to exit, the shotgun accidentally went off, injuring one of the occupants.

## II

### A

The defendant claims that the prosecutor impermissibly bolstered the credibility of a critical witness, Steven Olbinsky, by misrepresenting to the jury that no deal had been made in exchange for Olbinsky's testimony. The defendant's argument is actually two separate claims regarding means by which the prosecutor allegedly bolstered Olbinsky's credibility. The first claim is that the prosecutor stated that no inducement had been

offered for Olbinsky's testimony and that this was false. The second is that the prosecutor concealed the fact that the Commonwealth did not intend to prosecute Olbinsky. As to the first claim, there is not a sufficient evidentiary basis to find that the prosecutor's statement was false. The second claim, even if true, would not have served to bolster the witness's credibility.

The defendant's claim that the prosecutor misled the jury was explicitly rejected by the trial judge, who found that, despite the fact that Olbinsky's case was subsequently dismissed, "the prosecutor did not mislead the jury in informing them that the Commonwealth had made no deal with Olbinsky because the statement was true."

The defendant points out that there had been numerous continuances of Olbinsky's case after his motion to dismiss had been filed, that he made bail and was not in custody, and that the Commonwealth ultimately did not oppose his motion to dismiss nor appeal from the dismissal. This is insufficient to overturn the judge's finding that the Commonwealth did not offer the defendant any inducement for his testimony. An "inducement" has been defined as "any statement which 'reasonably implies that the government . . . is likely to confer or withhold future advantages . . . depending on [the] witness'[s] cooperation.' " *Commonwealth* v. *Schand,* 420 Mass. 783, 792 (1995), quoting *United States* v. *Buendo,* 701 F. Supp. 937, 942 (D. Mass. 1988), aff'd sub nom. *United States* v. *Penta,* 923 F.2d 839 (1st Cir. 1990). Olbinsky explicitly denied that any such statement was ever made to him. The charges against Olbinsky were not dropped by the prosecutor but were ruled, by a judge, to be insufficiently supported by the evidence as a matter of law. Further, there was evidence that Olbinsky had given consistent accounts of the incident since July, 1990, nearly two years before he was even indicted. The defendant's implied contention that some undisclosed inducement existed which, if exposed to the jury, would render Olbinsky's testimony less credible, is nothing but surmise.

Further, to the extent that Olbinsky had the sword of Damocles hanging over him in the form of a murder charge, and thus had incentive to please the prosecution in the hopes of establishing good will and securing leniency even absent any explicit agreement, this was argued by defense counsel at trial. Not only did counsel for the defendant bring out, during cross-examination, that Olbinsky was under indictment for this

murder, but he came back to this theme in closing, stating that Olbinsky was testifying to "save his own neck" and that he "would do anything, absolutely anything to please the government and convict [the defendant] because he doesn't want the punishment." In addition, the judge instructed the jury to consider whether any witness had a motive to testify in assessing his credibility.

As to the defendant's second claim, that the prosecutor concealed from the jury the fact that the Commonwealth did not intend to prosecute Olbinsky, that concealment, even if proved, would not have served to bolster the witness's testimony. As an initial matter, it was not even claimed that Olbinsky knew this fact — if it was a fact. Moreover, if he was aware of this, it would have provided him no incentive to lie on the Commonwealth's behalf. It was the very theme of "sav[ing] his own neck" that counsel for the defendant attempted to use to undermine Olbinsky's credibility at trial. Had the prosecutor revealed that Olbinsky was no longer in danger of being tried for this crime and that he knew it, that would have done far more for Olbinsky's credibility than did the silence to which the defendant now objects.

### B

The defendant argues that the judge abused his discretion by permitting the Commonwealth to present evidence of the defendant's prior criminal activity as evidence of the defendant's modus operandi. The judge admitted the testimony of the prior crime, to which the defendant had already pled guilty, based on the temporal and physical proximity of the two crimes (they occurred three days and two blocks apart) and the fact that each assailant was described as a black man, armed with a sawed-off shotgun, wearing a black coat, who broke down the victims' apartment doors. Further, the fact that the perpetrator in this instance first kicked in the door to another apartment and then sought the "right" one indicates that there was actually a considered mode of operation. Thus the judge was correct to rule that the crimes in question were sufficiently similar to each other and distinct in nature to be admitted as evidence of modus operandi. See *Commonwealth* v. *Marrero*, 427 Mass. 65, 71 (1998); *Commonwealth* v. *Jackson*, 417 Mass. 830, 841 (1994); *Commonwealth* v. *Brusgulis*, 406 Mass. 501, 506 (1990).

There were also sufficient indicia of reliability to justify

admitting the evidence of the prior bad act. The defendant contends that the identification of him by the victim of the previous crime was suspect and that his plea of guilty to the prior crime merely constitutes an admission to a criminal charge, not to a specific set of facts. Thus, the defendant claims, there is no reliable evidence that he committed any particular act which · could form the basis of modus operandi evidence. Whatever question was left by the guilty plea as to the precise factual circumstances of the crime was resolved, however, by the witness's description of the crime. And whatever question remained as to whether the defendant was the perpetrator of the crime as described was resolved by the guilty plea.

Not only was the evidence properly admitted, but the defendant concedes that the judge gave a proper limiting instruction at the conclusion of the trial. Although the defendant did not request an immediate limiting instruction, he nonetheless states that the absence of such an instruction was error. No such immediate instruction was necessary, and there was no substantial risk of a miscarriage of justice.

## C

The defendant argues that the prosecutor, in his closing argument, suggested facts not in evidence, attempted to inflame the jury, shifted the burden of proof to the defendant, improperly attacked defense counsel, and vouched for the credibility of witnesses. This, the defendant argues, deprived him of his right to a fair trial.

## 1

In his closing argument, the prosecutor pointed to the similarities between the method used by the perpetrator in this case and the method used in a crime to which the defendant had previously entered a guilty plea. The prosecutor then went on to note that these similarities were "not a coincidence because that's what [the defendant] used to do for a living, kicking in drug dealers' houses and rob [sic] them."

Defense counsel objected that this comment was outside the permissible scope of closing argument, because it went beyond mere inference by implying that there were numerous instances of such conduct though evidence of only one prior crime was presented. The defendant argues that this would lead the jury to

believe that the prosecutor had special knowledge of the defendant's past conduct and was vouching that the evidence presented was consistent with the defendant's reputation.

Even if the defendant is correct that the prosecutor's remarks went beyond logical inferences that could be drawn from the evidence presented and were consequently improper, it is unlikely that significant prejudice resulted from this single remark and the possible inferences to be drawn from it. Although the judge declined to give a specific instruction as defense counsel requested, to the extent that any of the statements were improper, any resulting prejudice was adequately cured by the judge's instruction to the jury that closing arguments were not evidence and were intended by counsel to express a point of view. See *Commonwealth* v. *Carmona, ante* 268, 273 (1998); *Commonwealth* v. *Simmons*, 419 Mass. 426, 434 (1995); *Commonwealth* v. *Cook*, 419 Mass. 192, 203 (1994).

2

In his closing argument the prosecutor stated that jurors should consider that witnesses testified against the defendant despite the fact that they were likely quite fearful of doing so. The defendant contends that the prosecutor's statements "radiate with the implication that if the defendant were to go free, the witnesses could lose their lives, or suffer serious harm."

Although a statement that the defendant would harm the witnesses should he go free would be improper, this was not a necessary implication of the prosecutor's statements. Rather, the prosecutor pointed out that the witnesses likely had a reasonable fear that testifying against a defendant at a murder trial was not something one would do lightly. Allowing a statement by a prosecutor that it took "courage" and "backbone" for a witness to testify and that the witness had the prosecutor's respect is not reversible error. *Commonwealth* v. *Lapointe*, 402 Mass. 321, 331 (1988) (holding no reversible error where prosecutor stated that it took "courage" and "character" to testify at murder trial and that witness had prosecutor's respect). See *Carmona, supra.*

3

The defendant also complains of the prosecutor's assertion, at

two different points in the Commonwealth's closing, that, if certain Commonwealth witnesses had obtained beneficial treatment in exchange for testifying, the jury "would have heard about it." The defendant argues that this language improperly implied that the burden to show the existence of inducements was on the defendant. The Commonwealth recognizes that the language was improper, but argues that no prejudice resulted because defense counsel had conceded in his summation that there were no explicit inducements. The defendant did continue to argue that, even in the absence of any promise of beneficial treatment, several witnesses had incentive to lie as they had matters pending in the criminal justice system.

Although the judge did not give a specific curative instruction, he did thoroughly instruct the jury that the defendant was presumed innocent and had no burden to prove his innocence, and that the Commonwealth had the burden of proving all of the elements of its case beyond a reasonable doubt. Given the fact that defense counsel had conceded the absence of explicit inducements and continued to challenge the credibility of these witnesses in the face of this admission, and the proper instruction by the judge, any prejudice to the defendant from the prosecutor's erroneous statement was de minimis. See, e.g., *Commonwealth* v. *Borodine*, 371 Mass. 1, 9 (1976), cert. denied, 429 U.S. 1049 (1977); *Simmons, supra* at 433-434.

4

The defendant contends that the prosecutor impermissibly vouched for the credibility of the Commonwealth's witnesses during his closing argument. The defendant bases this claim on two statements. The first is a statement by the prosecutor that certain of the Commonwealth's witnesses were "not on trial in this matter"; the second was a statement that a witness did not get a deal in return for his testimony and that "the testimony was I met the guy two weeks ago." The defendant failed to object to either of these statements at trial and is thus entitled to reversal only if the remarks created a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E. See *Carmona, supra* at 273; *Commonwealth* v. *Goudreau*, 422 Mass. 731, 736 (1996); *Commonwealth* v. *Giguere*, 420 Mass. 226, 232 (1995).

The first statement of which the defendant complains followed the defendant's closing argument, in which defense counsel argued that the witnesses provided by the Com-

monwealth were insufficiently reliable and therefore that the prosecution could not meet its burden of proof. The prosecutor began his closing argument by stating, "Let me make one thing perfectly clear from the outset that [the witnesses] are not on trial in this matter. The person seated right here [the defendant] is on trial." In this context, the statement did not serve to bolster the credibility of these witnesses but merely to focus the jury on the question at hand.

The defendant's second complaint is based on the prosecutor's comment that, if the Commonwealth had given Olbinsky a deal, the jury would have heard about it and that "the testimony was I met the guy two weeks ago." The defendant contends that, by this statement, the prosecutor injected his own credibility into the trial. But the prosecutor was not giving his own recollection of when the two met, he was merely accurately repeating testimony given during the direct examination of Olbinsky. His prefacing the comment with the phrase "the testimony was" makes this clear. Olbinsky did in fact testify to this effect, and it is not error for the prosecutor to refer to this testimony simply because he was personally involved in the underlying event.

In order to allay any such concerns, the prosecutor himself, in his closing, explicitly stated that the jury should not rely on him to determine the credibility of the witnesses. Furthermore, the defendant admits that a curative instruction was given by the judge, explaining that a lawyer is prohibited from vouching for the veracity of any witness and that the jurors themselves were to be the sole judges of credibility.

5

The defendant also takes issue with the prosecutor's references to defense counsel's use of a "smoke screen" and "smoking mirrors," and to defense counsel as "a clever lawyer," claiming that such comments amount to ad hominem attacks. It is settled law, however, that the prosecutor may comment on defense tactics that the jurors have witnessed themselves. See *Borodine, supra* at 11; *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 400-401 (1975). The comments of the prosecutor were in this vein. For example, defense counsel went to considerable lengths during cross-examination to show witnesses' inability to remember specific details about the night in question. The prosecutor's reference to defense counsel as a "clever lawyer," while best omitted, was during an attempt to

explain this tactic to the jury and remind them that it was not inconsistent with the nature of memory for witnesses to be certain about important facts while being unable to remember peripheral details.

## D

The defendant argues that the improper admission of five photographs of the crime scene and one autopsy photograph of the victim's head wound had a prejudicial impact that outweighed their probative value thereby depriving him of his right to a fair trial.

It is settled law that photographs showing the nature and extent of the victim's injuries are admissible as evidence that the defendant killed the victim with deliberate premeditation. *Commonwealth* v. *Meinholz*, 420 Mass. 633, 635-636 (1995). This is true whether or not the defendant actively disputes premeditation, as the prosecutor must nonetheless prove premeditation beyond a reasonable doubt to prevail. *Commonwealth* v. *Bastarache*, 382 Mass. 86, 106 (1980).

Nor does the fact that there was prior testimony regarding the appearance of the crime scene render the crime scene photographs without probative value or prejudicially redundant. We have previously noted that "[t]he fact that there ha[s] been previous testimony concerning the nature of the [crime] does not render the photograph[s] lacking in probative value." *Commonwealth* v. *Campbell*, 375 Mass. 308, 313 (1978). See *Commonwealth* v. *Bys*, 370 Mass. 350, 359 (1976).

The probative value of the photographs was not overwhelmed by their inflammatory potential. It is well settled that, "if the photographs possess evidential value on a material matter, they 'are not rendered inadmissible solely because they are gruesome [or duplicative] or may have an inflammatory effect on the jury.' " *Commonwealth* v. *Ramos*, 406 Mass. 397, 407 (1990), quoting *Bys, supra* at 358. See *Meinholz, supra* at 636; *Commonwealth* v. *Berry*, 420 Mass. 95, 108 (1995); *Commonwealth* v. *Gallagher*, 408 Mass. 510, 519 (1990); *Commonwealth* v. *Repoza*, 382 Mass. 119, 129 (1980), *S.C.*, 400 Mass. 516, cert. denied, 484 U.S. 935 (1987).

The defendant contends that the autopsy photograph, in particular, should not have been admitted — that the admissibility of such photographs is subject to a stricter standard. But the

case to which the defendant cites for this proposition is one in which the medical examiner had significantly altered the body. See *Bastarache, supra* at 105-106 (victim's brain removed prior to photograph). Here, the sole alteration was the shaving of the victim's hair in the area around the wound so the size and placement could be accurately seen. Given the evidentiary relevance of the photographs and the fact that the photographs portrayed the victim without postmortem decay or other injuries not the direct result of the defendant's actions, the judge was well within his discretion to admit the photographs. Cf. *Commonwealth* v. *Zagranski,* 408 Mass. 278, 289 (1990); *Commonwealth* v. *Talbot,* 35 Mass. App. Ct. 766, 778 (1994).

The defendant further argues that the judge erred in not providing a concurrent limiting instruction to the jury regarding the photographs. The absence of such an instruction is not, by itself, sufficient to render the admission of the photographs error. The absence of a limiting instruction is a factor that may be considered in determining whether the photographs were more prejudicial than probative, but it is only one factor. See *Commonwealth* v. *Keniston,* 423 Mass. 304, 309 (1996); *Commonwealth* v. *Richenburg,* 401 Mass. 663, 673 (1988). These pictures were clearly relevant, and the probability of significant prejudicial effect was minimal.

E

Although there was no objection at trial, the defendant now contends that the judge's remark that a witness for the Commonwealth, Olbinsky, was "not on trial here," "invaded the jury's fact-finding function, not merely by intimating a view of the witness's credibility, but by implicitly instructing the jury not to heed defense challenges to the veracity of his testimony." Examined in context of the trial, this comment could not have created a miscarriage of justice.

The judge made this statement in response to defense counsel's asking Olbinsky if he wore a mask on the night of the crime. Defense counsel was clearly implying that it was Olbinsky rather than the defendant who was the perpetrator. In this context, the jury would not have construed this comment as an instruction that Olbinsky's credibility was not at issue or that the judge was personally vouching for Olbinsky's credibility. The comment complained of is different in kind from the statements in the cases on which the defendant relies. For example,

in *Commonwealth* v. *Cohen,* 27 Mass. App. Ct. 1210, 1210 (1989), the judge stated, "[E]very defense attorney I see tries to turn an impartial witness into a defendant. I resent that." The judge here did not comment on the witness's credibility or partiality; he merely stated the fact that the witness was not the one on trial and prevented defense counsel from pursuing an improper line of questioning.

Furthermore, any resulting misperception that Olbinsky's credibility was not at issue was corrected by the judge's subsequent instructions that the jurors were the sole judges of witness credibility, and that the jury should disregard any perception that the judge believed that the case should be decided in a certain way.

## F

The defendant claims that his trial counsel provided ineffective assistance by essentially conceding in his summation that the defendant was guilty. The judge found that, in context, the comment was not sufficiently prejudicial to warrant granting the defendant a new trial. The judge's decision is entitled to substantial deference. *Commonwealth* v. *Schand,* 420 Mass. 783, 787 (1995), quoting *Commonwealth* v. *Moore,* 408 Mass. 117, 125 (1990), and cases cited.

The statement to which the defendant refers occurred toward the end of defense counsel's closing argument. He told the jury, "I would suggest to you after all is said and done, although the case may probably have happened as the government [said], that's not proof enough." This comment was in the context of a discussion of the burden of proof on the Commonwealth to prove its case beyond a reasonable doubt. Defense counsel followed this statement by explaining that a finding of a strong probability of guilt is insufficient to support a verdict of guilty and that the only verdict that made sense in this case was "that simply this is a case not proven." Given this context and the consistent zealous advocacy of the defense attorney during the trial, no reasonable juror could have interpreted the comment in question as an admission of guilt.

## G

The defendant contends that the judge erroneously denied his motion for a required finding of not guilty on the charge of

armed robbery. The defendant contends that, as there was no testimony by Lara, the father of the victim and the sole survivor of the incident, that anything was taken from him, the only evidence of the defendant's guilt is his extrajudicial confession.

There was testimony from multiple witnesses that the defendant admitted to each of the elements of the crime of armed robbery. The requirement that the extrajudicial confession be corroborated requires only that there be some evidence in addition to the confession. *Commonwealth* v. *Forde*, 392 Mass. 453, 458 (1984). This requirement was satisfied by the testimony of Perkins, who said he saw tangible evidence of the robbery in the form of cocaine and cash. There was also abundant evidence that the defendant broke into the victim's apartment with a shotgun. This evidence is sufficiently corroborative that testimony by Lara as to stolen items was not necessary to uphold the jury's verdict of guilty on the charge of armed robbery.

## H

The defendant contends that his convictions on the charges of armed robbery and breaking and entering a dwelling at nighttime with intent to commit a felony must be dismissed because they are duplicative of his conviction of murder in the first degree on the theory of felony-murder. However, felony-murder was not the only theory on which the defendant's conviction of murder in the first degree was based. The jury also found the defendant guilty of murder in the first degree on the theory of deliberate premeditation. Where the jury specify an alternate theory, in itself sufficient to support a conviction of murder in the first degree, the underlying felonies are considered separate and distinct crimes. See *Commonwealth* v. *Hogan*, 426 Mass. 424, 435 (1998); *Commonwealth* v. *Raymond*, 424 Mass. 382, 396-397 (1997); *Commonwealth* v. *Buckley*, 410 Mass. 209, 222 (1991).[1]

## III

We have examined the entire record, as required by G. L.

[1]The defendant contends generally that the judge erred in denying his motion for a new trial. This motion was premised on the claims of prosecutorial misconduct and ineffective assistance of counsel which we have addressed above. As we found these arguments to be without merit, we conclude that the judge was correct to deny the defendant's motion for a new trial.

c. 278, § 33E, and conclude that there is no basis for ordering a new trial or directing the entry of a verdict of a lesser degree of guilt.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*