David JACKSON, Petitioner,

v.

John MARSHALL, Respondent.

Civil Action No. 99–11837–WGY.

United States District Court,
D. Massachusetts.

July 24, 2007.

Jeanne M. Kempthorne, Law Office of
Jeanne M. Kempthorne, Mark L. Stevens,

Law Office of Mark Stevens, Salem, NH, for Petitioner.

James J. Arguin, Susanne G. Reardon, Attorney General's Office, Boston, MA, for Respondent.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

Petitioner David Jackson ("Jackson") brings this petition asking the Court to reconsider its judgment denying an evidentiary hearing on a claim made pursuant to a petition for a writ of habeas corpus. Pet.'s Mot. for Recons. of Order [Doc. No. 68]. This request requires that this Court travel through the treacherous intersection between statutory habeas law, federal civil procedure, and the common law of appeals from criminal sentences. This Court must look to the judgments of the Massachusetts courts, a most distinguished former colleague in this District, and the First Circuit. Necessary deference must be given to all of their well-reasoned conclusions, but, in the end, it is this Court that must decide whether it is legally appropriate that Jackson have an opportunity to develop his alleged new evidence.

### A. Factual and Procedural Background

According to facts found at trial, the key trial witness, Steven Olbinsky ("Olbinsky"), was present with Jackson on the night of the crime, directed Jackson to the location of the crime, and witnessed him load a weapon before entering the location. *Commonwealth v. Jackson*, 428 Mass. 455, 456–57, 702 N.E.2d 1158 (1998). Olbinsky left before the violence began, but was later indicted, along with Jackson, for first-degree murder. *Id.* at 457–58, 702 N.E.2d 1158; *Commonwealth v. Jackson*, No. SJ–2003–0065, slip op. at 2 (Mass. Oct.

23, 2003) (Sosman, J.) ("SJC Mem. and Order").

Despite the first-degree murder charge, Olbinsky was granted a $25,000 bail. SJC Mem. and Order at 3. When he was unable to come up with this amount, the bail was lowered to $5,000. *Id.* Sometime after Olbinsky was released on bail, the district attorney's office allegedly entered into a "bail agreement" with Olbinsky. *Id.* at 4. In that agreement, Olbinsky was to wear an electronic monitoring device as a condition of his release. *Id.*

Despite this condition, Olbinsky left the Commonwealth and traveled to the state of Oregon. He was subsequently arrested on a fugitive warrant stemming from the murder charge, and he was found to be in possession of a large quantity of methamphetamine. Suppl. to Response to Opp. to Mot. for Relief from J. [Doc. No. 49] ("Suppl.Resp."), Ex. B, at 6. Oregon issued a warrant for his arrest on the basis of the methamphetamine. *Id.* Massachusetts then requested that Oregon return Olbinsky because Olbinsky was a material witness in the Jackson case. *Id.* Once Olbinsky was back in the Commonwealth, Massachusetts authorities asked Oregon law enforcement to drop their charges so that Olbinsky could be released on bail pending Jackson's trial. *Id.* Oregon authorities did so, stating that they wanted to be "nice" to a witness for Massachusetts. *See id.* at 8.

During Jackson's trial, the prosecutor attempted to bolster Olbinsky's credibility by asserting repeatedly that there was no agreement between the District Attorney's office and Olbinsky. *E.g.*, Trial Tr. vol. 2, at 23:24–24:3 ("There's been no rewards, there's been no promises, there's been no inducements, no offers for his testimony. If there were, you'd know about it.") Jackson's trial counsel cross-examined Olbinsky about the alleged agreements,

which Olbinsky denied. *Id.* at 155:6–16. During his closing argument, the trial counsel admitted that he had no evidence of promises or inducements but asked the jurors to use "common sense." Trial Tr. vol. 5, at 36:22–37:16. The jury returned guilty verdicts for first-degree murder, armed robbery, and burglary. Two weeks after the conviction, a Superior Court justice granted Olbinsky's motion to dismiss the charges against him due to lack of evidence. SJC Mem. and Order at 2. The Commonwealth had not opposed this motion. *Id.*

Jackson, not knowing about the "bail agreement" or the circumstances in Oregon, still suspected that there must have been an agreement between the District Attorney and Olbinsky. He filed a motion for a new trial while his case was on appeal. The Supreme Judicial Court remanded the motion to the Superior Court, where Jackson explored the theory that Olbinsky had cooperated with the Commonwealth. The Superior Court denied the motion for a new trial and the Supreme Judicial Court affirmed both the conviction and the denial of the motion for a new trial. *Jackson,* 428 Mass. at 457–59, 702 N.E.2d 1158.

In 1999, Jackson filed a petition for the writ of habeas corpus [Doc. No. 4]. The case was assigned to Judge Keeton. Jackson requested an evidentiary hearing on the claim that prosecutors had made inducements for an alleged co-conspirator's testimony, had lied about this to the jury, and had not disclosed this to Jackson's attorneys. Mot. For Evid. Hr'g [Doc. No. 15]. Judge Keeton denied the request for an evidentiary hearing on the ground that there was insufficient evidence. *Jackson v. Marshall,* No. 99–11837–REK, slip op. at 9–11, 36 (D.Mass. Aug. 7, 2001) [Doc. No. 23] ("Aug. 7 Mem. and Order"). Judge Keeton then denied the petition for

the writ of habeas corpus. *Id.* at 36. Judge Keeton also denied Jackson's subsequent motion for a certificate of appealability, a request that the First Circuit also denied. *Jackson v. Marshall,* No. 99–11837–REK, slip op. at 8 (D.Mass. Aug. 7, 2001) [Doc. No. 30] ("Sept. 27 Mem. and Order").

Thereafter, Jackson asked the Suffolk County District Attorney's Office for materials relating to Olbinsky. Pet.'s Suppl. Mem. in Supp. of Discovery and Evid. Hr'g [Doc. No. 71] ("Pet.'s Mem.") at 3. Among the material he received pursuant to that request was the alleged "bail agreement" that laid out the conditions by which Olbinsky was to be released on the condition of electronic monitoring, despite being charged with first-degree murder. *Id.* at 3–4; Mot. for Clarification and Recons. [Doc. No. 41] ("Mot. For Recons."), Ex. D.

On the basis of this allegedly new information, Jackson again moved in the Superior Court for a new trial. The Superior Court denied the motion without a hearing. Jackson appealed the denial. A single justice of the Supreme Judicial Court, acting in a "gatekeeper" role, denied the request, stating that Jackson could have found this evidence at the time of trial because the docket in Olbinsky's case referred to the agreement. SJC Mem. and Order at 2–3.

Jackson then applied to the First Circuit, asking for permission to file a second petition for habeas corpus. The First Circuit denied the request, deferring to the opinion of the Supreme Judicial Court. *Jackson v. Nolan,* No. 04–1451, slip op. at 1 (1st Cir. Apr. 29, 2004).

Jackson subsequently tried a third option. He went back to Judge Keeton and asked for relief, pursuant to Federal Rule of Civil Procedure 60(b), from the judgment upon his original petition for habeas corpus. Mot. for Relief from J. [Doc. No. 37]. Judge Keeton allowed the motion and

reopened the original case, allowing the parties to file briefs addressing whether an evidentiary hearing ought be held. *Jackson v. Marshall*, No. 99–11837–REK, slip. op. at 7 (D.Mass. Oct. 3, 2005) [Doc. No. 52] ("Oct. 3 Mem. and Order"). Judge Keeton based this reversal on the facts that the bail agreement indicated a possible meritorious claim and that the "government's alleged hiding of this evidence, if true, would constitute extraordinary circumstances beyond [Jackson's] control." *Id.*

Jackson filed a motion for an evidentiary hearing, but the Commonwealth filed an interlocutory appeal to the First Circuit. The First Circuit declined to hear the interlocutory appeal. *Jackson v. Marshall*, No. 06–8002, slip op. at 1 (1st Cir. Sept. 15, 2006). In the interim, Judge Keeton retired from the bench, and the case was transferred to this session. The Commonwealth then filed its opposition to the evidentiary hearing.

This Court denied, without a hearing, the motion for an evidentiary hearing. Subsequently, however, this Court allowed a motion for reconsideration so that the parties could further brief their positions.

Jackson alleges that he came across the tape of criminal proceedings in Oregon against Olbinsky that took place in 1996, several years after Jackson's trial. Kempthorne Aff. [Doc. No. 72] ¶ 5. In the tape, Olbinsky's counsel allegedly stated that the Massachusetts murder warrant against Olbinsky had been a sham from the start. *Id.* ¶ 6. Allegedly, the police had lied to a grand jury to get Olbinsky indicted for murder because it was easier and more effective to issue a murder warrant than a material witness warrant. Olbinsky's counsel allegedly further stated that Olbinsky knew all along that he was not really being charged with murder. Finally, Olbinsky's counsel allegedly argued for leniency from the Oregon court on the ground that Olbinsky had cooperated fully with the Massachusetts authorities who had asked Oregon to drop its charges against Olbinsky. *Id.*

Jackson now believes that the "bail agreement" and the proceedings in Oregon vindicate his belief and that he should be allowed to re-investigate the relationship between Olbinsky and the government in order to determine if he received a fair trial.

## II. DISCUSSION

This Court must look to statute and precedent to determine whether an evidentiary hearing ought be granted. The starting point is the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254. The section of AEDPA concerning evidentiary hearings states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* § 2254(e)(2).

This section applies only if Jackson "failed to develop the factual basis of the

claim in state court." *Id.* The Supreme Court has weighed in on the interpretation of this clause in *Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). The Supreme Court held that due to the use of the word "failed," this section of AEDPA applies only if the petitioner did not develop the claim in state court due to his own fault through lack of diligence. *Id.* at 434–35, 120 S.Ct. 1479.

The First Circuit has recently cautioned against the overuse of federal evidentiary hearings:

> Federal habeas is a collateral proceeding; particularly after AEDPA, it is not intended to provide a forum in which to retry state cases. Consequently, in state prisoner habeas cases in which the applicant was afforded a full and fair hearing in state court, federal evidentiary hearings ought to be the exception, not the rule. Even when such a hearing is thought desirable, restraint should be the watchword.

*Pike v. Guarino,* 492 F.3d 61, 70 (1st Cir.2007) (internal citations omitted).

When Judge Keeton originally denied the motion for an evidentiary hearing, he held that Jackson's trial counsel had "made diligent efforts to investigate the factual basis of his claim in state court." Aug. 7 Mem. and Order at 8–9. Judge Keeton noted that Jackson had raised the issue of a possible deal between the prosecutor and Olbinsky as part of his motion for a new trial. *Id.* at 8. On this basis, Judge Keeton held that section 2254(e)(2) did not apply.

■ Subsequently, however, Jackson applied to the First Circuit for permission to file a second petition for habeas corpus. The court denied the petition, stating:

> [T]he petitioner fails to make any showing that the factual predicate for his claim could not have been discovered

previously through the exercise of due diligence. 28 U.S.C. § 2244(b). The state court found that the bail agreement that forms the basis of his claim was readily available at the time of his trial. The petitioner makes no showing that the finding was erroneous.

*Jackson,* No. 04–1451, slip. op. at 1. When the First Circuit held that due diligence would *not* have been futile, it ruled that due diligence *could have* turned up the factual predicate for the claim.

Although the First Circuit analyzed Jackson's petition under the rubric of section 2244(b)(2)(B)(i), and not section 2254(e)(2), the provisions are similar in relevant part. *See, e.g., Guidry v. Dretke,* 397 F.3d 306, 322–23 (5th Cir.2005) (stating that the standards are "almost identical"). As described, the Supreme Court held in *Williams v. Taylor* that, subject to two exceptions not relevant here, the opening provision of section 2254(e)(2) forbids an evidentiary hearing when the petitioner failed to exercise due diligence in developing the factual record. 529 U.S. at 435, 120 S.Ct. 1479. The First Circuit's ruling, in the section 2244(b) context, that due diligence *could have* turned up the factual predicate for the claim, requires this Court to hold, in the section 2254(e)(2) context, that Jackson *did not* exercise due diligence in developing the claim in state court.

■ Although Jackson produced new evidence after the First Circuit denied the second petition, this does not change the outcome. As that court ruled, Jackson could have developed the *factual predicate* by following up on review of the docket in Olbinsky's murder case. This review of the record would have turned up evidence identical to the new evidence that Jackson now proffers. If, as Jackson now contends, Olbinsky knew all along that the murder charges against him were a

"sham," Jackson could have obtained this information with due diligence.

■ Although Jackson is not entitled to an evidentiary hearing, the facts of this case are no less deeply troubling than when Judge Keeton reopened the case. Jackson alleges that the government never intended to prosecute Olbinsky for first-degree murder and that Olbinsky knew this. The record shows that this is not idle speculation. Massachusetts permitted Olbinsky to post bail of $5,000 and submit to electronic monitoring. When Olbinsky nonetheless fled to Oregon and faced drug charges there, Massachusetts persuaded Oregon authorities to return him to Massachusetts so that he could be a witness in Jackson's case. Finally, the government did not oppose Olbinsky's motion to dismiss the murder indictment for insufficient evidence, which was granted two weeks after Jackson's trial ended. This record does not rule out the possibility that the prosecutor lied to the jury about not having an agreement with Olbinsky.

If it is true that there was an agreement in place despite the prosecutor's assurances to the contrary, serious constitutional questions would be raised about the fairness of Jackson's trial. *See, e.g., Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Hayes v. Brown,* 399 F.3d 972, 980 (9th Cir.2005) (en banc). For this reason, this Court holds that Jackson has shown the "good cause" required for discovery in a habeas proceeding. 28 U.S.C. § 2254 Rules Governing Section 2254 Cases, Rule 6(a); *Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); *Bader v. Warden, New Hampshire State Prison,* 488 F.3d 483, 488 (1st Cir.2007).

## III. CONCLUSION

For the foregoing reasons, this Court rules that, while Jackson is not entitled to an evidentiary hearing, he is entitled to discovery from the prosecution of all promises, rewards, and inducements given to Olbinsky or on his behalf, including all actions taken in connection with the Oregon proceedings. Jackson is entitled to discovery of all documents of whatever name and nature evidencing such matters, including the notes of prosecutors and law enforcement officers that are in the possession of the Commonwealth or any of its political subdivisions. These documents shall be produced to counsel for the petitioner within 30 days of the date of this order. This order is without prejudice to Jackson seeking further discovery once a response to this discovery order has been made.

Jackson's motion for evidentiary hearing and for discovery [Doc. No. 58] is thereby ALLOWED in part and DENIED in part.

SO ORDERED.