COMMONWEALTH vs. DAVID COSTELLO.

Barnstable. September 4, 1991. - December 10, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Rape. Indecent Assault and Battery. Child Abuse. Evidence*, Admissions and confessions, Prior inconsistent statement, Hearsay.

A defendant charged with sexual offenses upon a child was entitled to re-
quired findings of not guilty for lack of any substantive evidence that a
crime was committed, where the alleged victim testified that the of-
fenses did not occur, where the contrary testimony of the alleged vic-
tim's counselor and a State police officer was admissible only as evi-
dence of the alleged victim's prior inconsistent statements and not as
substantive evidence, and where there was no evidence to corroborate
the extrajudicial admissions or confessions the defendant made to two
therapists who had counseled him. [374-376]

INDICTMENTS found and returned in the Superior Court Department on July 5, 1988.

The cases were tried before *James J. Nixon*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Russell J. Redgate* for the defendant.

*Julia K. Vermynck*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. A jury convicted the defendant of the rape of a
child under the age of sixteen and indecent assault and bat-
tery on a child under the age of fourteen. The defendant has
appealed from the trial judge's denial of his motions for re-
quired findings of not guilty and for a new trial. We trans-
ferred the case from the Appeals Court on our own motion.
Because we conclude that there was insufficient evidence to
convict the defendant of the crimes charged against him, we
need not consider the defendant's motion for a new trial, and

we reverse the judgments and remand the case for entry of judgments of acquittal.

The Commonwealth's case against the defendant consisted of testimony from five witnesses. The alleged victim testified for the Commonwealth, as did two therapists, Thomas Brown and Deborah Heath, with whom the defendant had spoken. The Commonwealth also offered testimony from the alleged victim's counselor, Shirley Gosnear, and a State trooper, William Burke, to impeach the alleged victim's testimony. The defendant presented no evidence.

The alleged victim first met the defendant in August, 1987, at a railroad station in Hyannis, where the defendant worked as a bus driver. The defendant's supervisor, a friend of the alleged victim, introduced the alleged victim to the defendant. The alleged victim met with the defendant between ten and twelve times that month, and he introduced his mother to the defendant in September of that year. The alleged victim testified that he was alone with the defendant on only two occasions, during an overnight camping trip to New Hampshire, and during an overnight stay with the defendant at the defendant's apartment in December of 1987, after which the alleged victim was placed in State custody. The defendant married the alleged victim's mother on May 5, 1988, and the alleged victim changed his last name to that of the defendant later that same month.

Throughout his voir dire and trial testimony, the alleged victim denied having a sexual relationship with the defendant, and he further testified that he had not told anyone that he had such a relationship with the defendant. The alleged victim did testify that he had been a victim of sexual abuse for a number of years, although it was several years prior to his introduction to the defendant.

The Commonwealth produced two witnesses to impeach the alleged victim's testimony by use of his prior inconsistent statements. The judge instructed the jury that the prior inconsistent statements of the alleged victim could be considered only as impeachment evidence. The parties argued the case on this basis.

The first impeachment witness was Shirley Gosnear, who had been the assistant director of the Attleboro Center, a psychiatric treatment center, where the alleged victim was placed in April of 1988. Gosnear testified that she spoke with the alleged victim in the later part of May, 1988, after he requested to speak with her, because he was upset about his mother's marriage to the defendant, and he was also fearful for his younger brother and sister who were living in his home with the defendant. Gosnear testified that the alleged victim told her about some of the details of his relationship with the defendant, including their initial meeting at the train station and their overnight camping trip. She also testified that the alleged victim informed her that he was sexually involved with the defendant at his apartment.

The second impeachment witness for the Commonwealth was Trooper William Burke. Burke testified that the alleged victim told Burke that he had first met the defendant at the train station in Hyannis, and that the alleged victim also told him that he had had sexual relations with the defendant, involving oral and anal intercourse and mutual masturbation, on more than one occasion at the defendant's apartment.

The Commonwealth then produced two witnesses, both therapists, who testified as to statements that the defendant made to them. Thomas Brown, a counselor at the Center for Individual and Family Services in Hyannis, testified that he began to see the defendant in August of 1987. According to Brown, the defendant informed him, in September of 1987, of the initial introduction to the alleged victim at the Hyannis railroad station the previous month. In spite of Brown's admonition to the defendant to limit his contact with the alleged victim, in October the defendant informed Brown that he liked the alleged victim and that he had met the alleged victim's mother, whereupon Brown once again warned the defendant that contact with this family could cause him problems. On December 9, 1987, the defendant made a special appointment with Brown because the defendant was upset about his relationship with the alleged victim. Brown testified that the defendant admitted at that appointment that

he had been sexually involved with the alleged victim at his apartment.

The Commonwealth's final witness, Deborah Heath, conducted an intake interview with the defendant at the Wareham Counseling Center in April of 1988. The purpose of the interview was to determine the defendant's appropriateness for a sexual offenders' group. Heath testified that the defendant told her that he had sexually abused the thirteen year old son of his girl friend, that the abuse involved oral and anal intercourse and mutual masturbation, and that this had occurred five or six times.

The defendant contends that the judge should have granted his motion for required findings of not guilty, because the only evidence implicating the defendant in a crime came from his statements to the therapists. The alleged victim's testimony directly contradicted the therapists' testimony, and the testimony of Gosnear and Burke, concerning the alleged victim's statements to them, was introduced only as prior inconsistent statements and not as substantive evidence. Therefore, the defendant contends that there was no corroboration of his confessions and that there should have been required findings of not guilty under the principle established in *Commonwealth* v. *Forde*, 392 Mass. 453 (1984), in which this court adopted the corroboration rule whereby a conviction cannot be based solely in evidence of a defendant's uncorroborated extrajudicial confession. *Id.* at 457-458.

The standard of review on the defendant's motion for a required finding of not guilty is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). The standard for the corroboration rule, however, is merely that "there be some evidence, besides the confession, that the criminal act was committed by someone, that is, that the crime was real and not imaginary." *Forde, supra* at 458.

Commonwealth *v.* Costello.

In this case, because the alleged victim testified that no crime was committed and the testimony of Gosnear and Burke was introduced only as prior inconsistent statements and not as substantive evidence, there is no evidence, besides the defendant's confessions, that the crimes were real and not imaginary. Even though the defendant made two separate confessions, it is well-established that one extrajudicial confession may not corroborate another extrajudicial confession.[1] See *Duncan* v. *State*, 64 Md. App. 45, 54 (1985); *State* v. *Charity*, 587 S.W.2d 350, 354 (Mo. Ct. App. 1979); McCormick, Evidence § 145, at 368 (Cleary ed. 1984). Even if the defendant's statements to the therapists could be considered admissions, the corroboration rule applies to admissions as well as confessions.[2] See *Commonwealth* v. *Leonard*, 401 Mass. 470, 472-473 (1988) (corroboration rule applies to admissions that fall short of being a confession).

In the present case, the alleged victim's testimony, while it does corroborate many elements of the defendant's statements to the therapists, does not corroborate any element of the crime except for the age of the alleged victim. While the corroboration rule does not require corroboration of each element of a crime, it does, at a minimum, require corroboration of the fact that a crime was committed by someone. See *Forde, supra* at 458 (that the alleged victim is dead is sufficient corroboration in a homicide case). In the present case, the alleged victim's supposedly corroborating testimony is not even "ambiguous and speculative," as was the corroborating evidence in *Leonard, supra* at 473. In this case, the alleged victim completely denied that the defendant committed any crime.

---

[1] A judicial confession, however, may corroborate an extrajudicial confession. *State* v. *Schomaker*, 303 N.W.2d 129, 131 (Iowa 1981). *State* v. *McClain*, 208 Minn. 91, 95 (1940).

[2] In States in which the corroboration rule is limited to confessions, an admission may corroborate an extrajudicial confession. *People* v. *Oliver*, 111 Mich. App. 734, 740-741 (1981). *State* v. *Manzella*, 306 Or. 303, 314 (1988).

The Commonwealth was unable to present any substantive evidence that a crime was committed. There was no evidence of physical harm to the alleged victim, see *State* v. *Ervin*, 731 S.W.2d 70, 72 (Tenn. Crim. App. 1986) (pelvic examination of victim corroborated defendant's confession). The alleged victim did not make his statements for the purposes of medical treatment which would have excepted them from the rule barring hearsay, see *State* v. *Garza*, 337 N.W.2d 823, 824 (S.D. 1983) (child sexual abuse victim's statements to physician about sexual assault deemed to be for purpose of diagnosis and treatment, and hence can corroborate defendant's confession); P.J. Liacos, Massachusetts Evidence 346 (5th ed. 1981) (in Massachusetts, physician may testify about statements made by declarant for purpose of diagnosis and treatment). Finally, the alleged victim's prior inconsistent statements do not fall into any traditional res gestae exception to the hearsay rule. See *Commonwealth* v. *Sellon*, 380 Mass. 220, 229 (1986) (recognizing spontaneous exclamation exception to hearsay rule). Cf. *State* v. *Smith*, 315 N.C. 76, 90 (1985) (excited utterance exception to hearsay rule covers statements made by child sexual abuse victim several days after assault occurred); *Bertrang* v. *State*, 50 Wis. 2d 702, 707-708 (1971) (child sexual abuse victim's statement that she had been abused, made one day after abuse occurred, allowed in under res gestae exception to hearsay rule).

We recognize that child sexual abuse cases engender special evidentiary problems, especially in light of the tendency of child sexual abuse victims to recant their prior accusations, see Bahlmann, Trial Issues in Child Abuse, The Abused and Neglected Child: Multi-disciplinary Court Practice 439, 441, 458-459 (PLI 1978) (child abuse victims, susceptible to parental influence, likely to change testimony); Libai, The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System, The Sexual Victimology of Youth 187, 233 (L. Schultz, ed. 1980) (child abuse victims naturally wish to avoid questioning on abuse); Summit, The Child Sexual Abuse Accommodation Syn-

drome, 7 Child. Abuse and Neglect 177, 188 (1983) ("Whatever a child says about sexual abuse, she is likely to reverse it"); Note, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases, 83 Colum. L. Rev. 1745, 1745-1746, 1751-1752 (1983) (child abuse victims reluctant to testify against defendants). However, the Commonwealth has not argued for any exception to our evidentiary rules. Our cases do not recognize prior inconsistent statements as substantive evidence as do some States.[3] See *Commonwealth* v. *Daye*, 393 Mass. 55, 66 (1984) (settled rule in Massachusetts that prior inconsistent statements admissible only to impeach witness' credibility and not for truth of matter asserted). See also *Brown* v. *State*, 175 Ga. App. 246, 247 (1985) (prior inconsistent statement of child sexual abuse victim who recanted at trial admissible as substantive evidence of defendant's guilt); *Patterson* v. *State*, 263 Ind. 55, 57-58 (1975) (prior inconsistent statements admissible as substantive evidence when declarant takes stand and does not profess ignorance of or deny prior statements). Nor do we recognize the innominate exception to the hearsay rule as does Fed. R. Evid. 803(24). See *United States* v. *Shaw*, 824 F.2d 601, 609 (8th Cir. 1987), cert. denied, 484 U.S. 1068 (1988) (child abuse victim's statements about abuse are exceptional circumstances under rule 803[24]). The General Court has not enacted any legislation that provides a hearsay exception for child abuse victims, as have several States. See, e.g., *State* v. *Hester*, 801 S.W.2d 695, 696 (Mo. 1991) (statutory hearsay exception for child abuse victims); *Holland* v. *State*, 770 S.W.2d 56, 59 (Tex. Ct. App. 1989); *State* v. *Jones*, 50 Wash. App. 709, 710 (1988).

---

[3]Additionally, at least one State has allowed one child abuse victim's prior inconsistent statements to corroborate another child abuse victim's prior inconsistent statements, *Clifton* v. *State*, 758 P.2d 1279, 1282 (Alaska Ct. App. 1988), and another State allows a child sexual abuse victim's unsworn testimony, which itself must be corroborated, to corroborate a defendant's otherwise uncorroborated confession, *People* v. *Philipp*, 106 A.D.2d 681, 682 (N.Y. 1984).

Because the Commonwealth recognizes no hearsay excep-
tion for the alleged victim's prior inconsistent statements
whereby they would constitute substantive evidence, and no
argument was made either at trial or before us for any such
hearsay exception for the prior inconsistent statements, this
court concludes that there was no substantive evidence in this
case that a crime was committed. It was error, therefore, to
deny the defendant's motions for required findings of not
guilty.

> *Judgments reversed.*
>
> *Verdicts set aside.*
>
> *Judgments for the defen-
> dant.*