COMMONWEALTH *vs.* JOSE M. VILLALTA-DUARTE.

No. 00-P-1270.

Suffolk. February 12, 2002. - September 12, 2002.

Present: BECK, GILLERMAN, & KAFKER, JJ.

*Evidence,* Admissions and confessions, Corroborative evidence. *Constitutional Law,* Admissions and confessions. *Practice, Criminal,* Sentence, Duplicative charges. *Assault with Intent to Rape. Indecent Assault and Battery.*

At the trial of indictments for rape of a child, assault with intent to rape, and indecent assault and battery of a child, there was sufficient corroboration of the defendant's voluntary confessions to support convictions on the indictments, where the evidence was sufficient to support an inference that something traumatic occurred in the apartment in which the defendant lived and in which the fifteen month old victim was being provided day care. [825-827]

This court vacated convictions on duplicative indictments of assault with intent to rape and indecent assault and battery, but found no reason to remand the case for resentencing on the remaining indictments of rape. [827]

INDICTMENTS found and returned in the Superior Court Department on December 11, 1996.

The cases were tried before *Robert H. Bohn,* J.

*William R. Hill, Jr.,* Committee for Public Counsel Services, for the defendant.

*Alex G. Philipson,* Assistant District Attorney (*David Deakin,* Assistant District Attorney, with him) for the Commonwealth.

BECK, J. A Superior Court jury convicted the defendant of two counts of rape of a child, two counts of assault with intent to rape, and one count of indecent assault and battery of a child. He was found not guilty of assault and battery of a child under fourteen causing bodily injury. On appeal, the defendant claims, as he did in a motion to dismiss the indictments and in his three motions for a required finding of not guilty, that there was

insufficient evidence of his guilt, other than his confessions. See *Commonwealth* v. *Forde*, 392 Mass. 453 (1984).

*The corroboration rule.* In *Forde*, the Supreme Judicial Court held for the first time that "an uncorroborated confession is insufficient to prove guilt." *Id.* at 457. Until that decision in 1984, Massachusetts was the only State that did not require such corroboration. *Ibid.* See *Commonwealth* v. *Killion*, 194 Mass. 153, 153-154 (1907) (holding that there was no error in the trial judge's refusal to instruct the jury that the defendant could not be convicted on his extrajudicial confessions unless there was other evidence of the alleged crime, but noting that "the great weight of authority is against the sufficiency of an uncorroborated extrajudicial confession to warrant a conviction," and concluding that, in any event, there was corroboration in that case); *Commonwealth* v. *Kimball*, 321 Mass. 290, 293 (1947) (holding fast to the Massachusetts rule while acknowledging the general rule elsewhere); *Commonwealth* v. *Shaheen*, 15 Mass. App. Ct. 302, 307 (1983) (declining to depart from the settled law of the Commonwealth on corroboration). As enunciated in *Commonwealth* v. *Forde*, *supra* at 458, "[t]he . . . rule requires only that there be some evidence, besides the confession, . . . that the crime was real and not imaginary."

The court belatedly adopted the rule despite the fact that "the majority rule ha[d] been criticized, and diluted, and the advantages of our flexible rule . . . acknowledged." *Id.* at 457. See, e.g., *Daeche* v. *United States*, 250 F. 566, 571 (2d Cir. 1918) (Hand, J.) ("[T]hat [the corroboration] rule has in fact any substantial necessity in justice, we are much disposed to doubt . . . . [S]uch evils as it corrects could be much more flexibly treated by the judge at trial"). Ironically, the *Forde* court concluded that the rule was "of no assistance" in that case because there was corroboration. *Commonwealth* v. *Forde*, *supra*. Forde had initially reported that his wife was missing and then, the next day, reported that he had discovered his wife's body on the back porch. *Id.* at 454. The court held that those facts constituted corroboration of an incriminating statement Forde later signed at the police station. *Ibid.* The body constituted the "corpus delicti" — the loss or injury sustained. *Id.* at 458. The issue in this case is whether circumstantial

evidence of a different sort satisfies the rule. We turn to the facts of this case.

*Facts.* The jury could have found the following facts. In 1994, the defendant and his wife and their one year old son lived in an apartment in Revere. The victim, whom we shall call Amy, and her mother and brother lived in the same apartment building as the defendant and his family. In the early summer of 1994, Amy's mother posted a notice in the laundry room at the apartment complex seeking day care for Amy, who was then about fifteen months old. The defendant's wife responded. Shortly thereafter, the defendant's wife began to provide daily full-time child care for Amy in the apartment where the defendant and his family lived.

The defendant's wife and Amy's mother offered conflicting testimony as to the child's typical demeanor. In any event, in July and August of 1995, Amy's "crying pattern changed drastically." She began to cry "hysterically" upon leaving her apartment for day care. Upon arrival, she would throw herself on the floor, rolling and kicking her feet. She had not behaved that way before. The victim's mother "knew . . . something was wrong." She immediately began to look for another day care provider.

At about the same time, Amy developed a "serious" diaper rash in her vaginal area that resisted treatment. The child previously had not had such rashes. Occasionally the victim also had small scratches on her face that had not been there before.

When the victim first started going to the defendant's apartment for day care, the defendant was never there. However, in the summer of 1995, at the time of the diaper rash and the change in Amy's behavior, he was there every day. The defendant's wife admitted that, on at least one occasion, she left the defendant alone with Amy. (The prosecutor conceded that there was "some ambiguity" in the transcript as to whether the defendant's wife had told the Revere police that the child cried when the defendant entered the room. The prosecutor, therefore, did not rely on that evidence as corroboration.)

By the end of August, 1995, the mother had found another day care provider. On the child's first day at the new location, she screamed and flailed her arms when the new provider tried to change her diaper. She also screamed and ran from the new caretaker's husband the first time she saw him. But after about

a month, with the new day care provider reassuring the victim that "everything was ok," the crying and tantrums subsided. The rash also disappeared.

In January, 1996, the defendant joined the Boston Church of Christ, which encouraged its members to discuss sinful thoughts as well as sinful actions. The defendant spent a lot of time reading the Bible. In October, 1996, the defendant confessed to four members of his church that he had sexually assaulted a baby in his wife's care. Three of the four testified at trial. They described the defendant as oriented and coherent during these confessions. The next month, the defendant went to the district attorney's office and confessed to two Boston police officers. The following day he repeated the confession to two Revere police officers. His tape recorded statement was transcribed, introduced in evidence, and played for the jury, who were permitted to use the transcription of that statement as a chalk. In essence, after being given the standard Miranda warnings and signing a Miranda card, the defendant admitted that, on two different occasions, he had rubbed his penis against Amy's "private part" until he ejaculated. These incidents began with his placing the child on the changing table and pretending to change her diaper while his wife and son were out of the apartment. He also penetrated the child with his finger after using Vaseline. When Amy cried, he hit her in the face.

At trial, the defendant's only witness was a professor of psychology who testified as an "informational witness" on the subject of voluntary false confessions. He testified that a person might make a voluntary false confession if he had a pathological need for attention.

*Issues on appeal.* Prior to trial, the defendant moved to dismiss the indictments on the ground that there was insufficient evidence to indict under the *Forde* rule. See *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982). That motion was denied by the trial judge. There was no error. The confessions themselves constituted the probable cause necessary to support an indictment. See *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450-451 (1984).

At the close of the Commonwealth's case, at the close of all the evidence, and again following the jury's verdict, the

defendant filed motions for a required finding of not guilty. All the motions rest on the same claim, that is, that there was insufficient corroboration of the defendant's confessions to support the convictions. We now address those motions.

*Standard of review.* "Where the evidence of corroboration is tested by a motion for a required finding of not guilty, the standard of review may be less demanding of the prosecution than the familiar test of *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), and may require 'merely that "there be some evidence, besides the confession, that the criminal act was committed by someone, that is that the crime was real and not imaginary." ' *Commonwealth* v. *Costello*, 411 Mass. 371, 374 (1991), quoting from *Commonwealth* v. *Forde*, [392 Mass.] at 458." *Commonwealth* v. *Landenburg*, 41 Mass. App. Ct. 23, 25 (1996). "[I]n satisfying [*Latimore*], the Commonwealth may rely on reasonable inferences drawn from circumstantial evidence." *Commonwealth* v. *Manning*, 41 Mass. App. Ct. 18, 21 (1996), quoting from *Commonwealth* v. *Adams*, 421 Mass. 289, 290-291 (1995). "[O]ne extrajudicial confession[, however,] may not corroborate another extrajudicial confession." *Commonwealth* v. *Costello, supra* at 375. The corroboration rule does not require corroboration of each element of a crime, but it does at a minimum require evidence that the crime was committed by someone. *Ibid.* See *Commonwealth* v. *Forde, supra.*

*Discussion.* The primary purpose of the corroboration rule is to "guard against conviction for imaginary crimes," *Commonwealth* v. *Forde, supra,* i.e., to prevent deranged people from being punished for imaginary crimes they claim to have committed. See Mullen, Rule without Reason: Requiring Independent Proof of the Corpus Delicti as a Condition of Admitting an Extrajudicial Confession, 27 U.S.F.L. Rev. 385, 385 (1993). See also Gudjonsson, The Psychology of False Confessions, 142 New L.J. 1277 (1992). For example, in *Commonwealth* v. *Forde, supra,* the court held that "in a homicide case, the corroborating evidence need only tend to show that the alleged victim is dead," to show that "the crime [to which the defendant confessed] was real and not imaginary." See *Commonwealth* v. *Manning, supra.* "The corroboration required

. . . may be quite minimal." *Commonwealth* v. *Sineiro*, 432 Mass. 735, 745 n.11 (2000), quoting from Liacos, Massachusetts Evidence § 9.12, at 656 (7th ed. 1999). See *Commonwealth* v. *McNelley*, 28 Mass. App. Ct. 985, 987 (1990) (fact that no one else was in the area was sufficient corroboration of the defendant's admission that he was driving under the influence of intoxicating liquor).

The only corroboration rule case concerning sexual abuse of a child in Massachusetts we have found is *Commonwealth* v. *Costello, supra.* In that case, there was insufficient corroboration in large measure because the victim denied that he had been abused. His statements to the contrary were admissible only for impeachment purposes, and there was no evidence of criminal conduct other than the defendant's confession. *Commonwealth* v. *Costello, supra.* The court did, however, "recognize that child sexual abuse cases engender special evidentiary problems." *Id.* at 376. We think that, considering these special problems and the history and development of the rule in Massachusetts, there is sufficient corroboration here. Cf. *Commonwealth* v. *Manning, supra* at 20 ("orthodox definition of 'corpus delicti' discussed in *Commonwealth* v. *Forde,* [*supra*], does not directly advance our analysis").

All the *Forde* rule, as reaffirmed in subsequent cases, requires "is that there be *some* evidence, other than a confession, that the criminal act was committed by someone." *Commonwealth* v. *Morgan*, 422 Mass. 373, 378 (1996) (emphasis supplied). Here the evidence showed that, at the same time that the defendant was present at his apartment during the day, the preverbal victim began to cry hysterically when brought to the apartment, developed an intractable diaper rash, and had scratches on her face. These symptoms, which were initially repeated at the home of a new day care provider, disappeared after a few weeks at that provider's home. This evidence is sufficient to support an inference that something traumatic occurred in the apartment where the defendant lived. Contrast *Commonwealth* v. *Landenburg*, 41 Mass. App. Ct. at 25 (no evidence that items defendant claimed to have stolen had been stolen). Moreover, although not necessary under Massachusetts cases, the evidence, aside from the confessions, suggests that

the defendant was a likely culprit. See *State* v. *Ervin*, 731 S.W.2d 70, 71-72 (Tenn. Crim. App. 1986) (enlarged vaginal opening sufficient circumstantial evidence to establish "corpus delicti" and corroborate defendant's confession that he had sexually abused his eleven year old stepdaughter, even though she recanted and said that she had had sex with a boy). Compare *New York* v. *Groff*, 71 N.Y.2d 101, 103, 110 (1987) (unsworn grand jury testimony of four year old girl who said she did not know the difference between telling the truth and telling a lie was sufficiently corroborated by evidence of vaginal rash, pain on urinating, and personality change after night on which child said defendant had raped her).

*Sentencing issue.* The Commonwealth concedes that we should vacate the convictions on the duplicative indictments of assault with intent to rape and indecent assault and battery, see *Commonwealth* v. *Morin*, 52 Mass. App. Ct. 780, 788 (2001). We agree and, accordingly, vacate those judgments, set aside the verdicts, and order the indictments on those charges dismissed. We disagree with the Commonwealth's contention that we should remand the case for resentencing on the indictments for rape. Those sentences (from seven to ten years at M.C.I., Cedar Junction, on one indictment and five years probation from and after that sentence on the other) are to stand and the judgments on the rape indictments are affirmed.

*So ordered.*