## Commonwealth vs. Jonathan Rodriguez.

No. 07-P-1847.

Middlesex. May 14, 2009. - December 29, 2009.

Present: Berry, Mills, & Wolohojian, JJ.

*Rape. Evidence,* Admissions and confessions, Corroborative evidence. *Constitutional Law,* Admissions and confessions. *Practice, Criminal,* Instructions to jury. *Consent. Intoxication.*

At a criminal trial, the evidence was sufficient for the jury to infer the penetration element of the crime of oral rape of a child, in violation of G. L. c. 265, § 23 [62-63]; further, with respect to a charge of vaginal rape of a child by force, in violation of G. L. c. 265, § 22A, there was sufficient corroborating evidence, besides the defendant's confession, to support an inference that illegal sexual conduct took place between the defendant and the victim and that the crime confessed to was not imaginary [63-65].

At the trial of indictments charging oral rape of a child and rape of a child, the judge's lengthy instructions, considered in their entirety, conveyed effectively the jury's task of determining whether, because of the consumption of alcohol, the victim was so impaired as to be incapable of consenting to intercourse [65-66]; moreover, there was no merit to the defendant's claim that the judge's correction of a misstatement improperly prohibited the jury from weighing the defendant's level of intoxication in their deliberations [66].

Indictments found and returned in the Superior Court Department on February 7, 2004.

After transmittal of the youthful offender documents to the Middlesex County Division of the Juvenile Court Department, the cases were tried before *Jay D. Blitzman,* J., and a motion for a new trial, filed on May 12, 2008, was heard by him.

*Jennifer H. O'Brien* for the defendant.

*Susanne R. Bines,* Assistant District Attorney, for the Commonwealth.

Mills, J. The defendant was convicted as a youthful offender of rape of a child by force (penis in genital opening), G. L. c. 265, § 22A, and rape of a child (penis in mouth), G. L. c. 265,

§ 23. The charges arose out of an evening of drinking alcohol, culminating in sexual activity among five boys and two girls. The defendant appeals from his convictions and from the denial of his motion for a new trial, arguing that the evidence was insufficient as to both charges and that the jury instructions on intoxication and capacity to consent were flawed. We affirm.

*Background.* We recite the facts in a light most favorable to the Commonwealth under the familiar standard of *Commonwealth v. Latimore*, 378 Mass. 671, 676-677 (1979). On the evening of July 15, 2002, the victim, her friend Mary (a pseudonym), and five boys including the defendant and Mike (also a pseudonym) went to a local elementary school playground to "hang out" and drink alcohol. Earlier that day, the girls, both thirteen years old, had met up with the defendant (then age fourteen) and the other boys at a nearby park, and then went to Mike's house to watch television and listen to music. The boys invited the girls to hang out and drink alcohol that evening, and the girls agreed.

The girls left Mike's house at 6:00 P.M. for about one hour in order to "check in" with their parents. Knowing their parents would not allow them to go out with the boys, they lied and said they were going to the movies and spending the night at Mary's house. When they returned to Mike's house, one of the boys had a backpack with liquor in it, and the group walked from Mike's house to the elementary school. The girls were "apprehensive about everything happening" so they made a plan to watch out for each other. When they arrived at the school, Mike made mixed drinks for everyone in red plastic cups.

After consuming one mixed drink and several "shots," and playing several "chugging" games, the victim felt dizzy and nauseous and was having difficulty walking. She leaned against a cement wall, talked to Mike while he touched her face, and then spoke with the defendant while he rubbed her back and touched her face. She lost consciousness at some point after this.

When the victim regained consciousness, there was "a penis in [her] face." She then lost consciousness again, and when she regained it the second time, she believed "that someone was performing oral sex on [her]," that is, she had the "[f]eeling of his[1] mouth in [her] private area . . . [her] vagina." The victim lost

---

[1]The victim did not testify as to whom the word "his" referred.

consciousness a third time and when she woke up there was a person on top of her. She recognized the voice of this person as belonging to Mike, and she felt pain in her "private area" while he was lying on top of her.

The next thing the victim recalled is leaving the elementary school. She was having difficulty walking so two of the boys helped her up a hill. The boys walked with the girls until they were near Mary's house, and then the girls helped each other to the door of the house. Inside, Mary went straight upstairs while the victim had a short conversation with Mary's mother before going upstairs. A few minutes later, Mary's sister, followed by her mother and her brother-in-law, came into Mary's room to ask what had happened. Toward the end of a conversation with Mary's mother, the victim said, "I think we were raped."

The victim's parents and the police were called, and both girls were transported to the hospital. Hospital staff obtained vaginal swabs and urine and blood samples from the victim; testing revealed sperm cells from Mike on the exterior portion of her vagina. No deoxyribonucleic acid (DNA) of the defendant was found on the victim.

A detective was dispatched to investigate a "possible sexual assault." When he tried to talk to the victim she was "incoherent" and "disheveled." The same detective later interviewed the defendant, and the audio tape recording of this interview was admitted and played for the jury at trial.[2] On the recording, the defendant admitted that he knew the victim was drunk, that he placed his penis "on" the victim's mouth, and that he placed his penis inside the victim's vagina. He made statements to the effect that the victim consented to these actions. According to the defendant, he did not use a condom or ejaculate, and he did not put his mouth or tongue on the victim's vagina. He also stated that after he had sexual intercourse with the victim, Mike had sexual intercourse with her.

A grand jury indicted the defendant as a youthful offender on three counts of rape of a child with force. At the jury trial, at which the defendant did not testify, the defense strategy was essentially to challenge, through cross-examination of the Com-

---

[2]No issue is raised in this appeal as to the admissibility of the defendant's recorded statements or as to the jury instructions regarding their use.

monwealth's witnesses and argument, the elements of penetration and force, there being no serious contention that the defendant was not present or did not engage in sexual acts with the victim.[3] The jury convicted him on the first indictment, rape of a child by force, "to wit: [the defendant's] penis in [the] child's genital opening." On the second indictment for rape of a child by force ("to wit: [the defendant's] penis in [the] child's mouth"), the jury found him guilty of the lesser included offense of rape of a child. The jury found the defendant not guilty on the third indictment, on which he was tried as a joint venturer in the victim's forcible rape by Mike.

*Discussion.* 1. *Sufficiency of evidence of oral rape.* We reject the defendant's argument that the evidence was insufficient on the element of penetration as to the crime of rape of a child (by penis in mouth). "The crime of 'unnatural sexual intercourse' with a child includes oral sex." *Commonwealth* v. *Fowler*, 431 Mass. 30, 33 (2000), citing *Commonwealth* v. *Gallant*, 373 Mass. 577, 583 n.5, 584 (1977). While "there [must] be some degree of penetration," *Commonwealth* v. *King*, 445 Mass. 217, 224 (2005), cert. denied, 546 U.S. 1216 (2006), it may be inferred from circumstantial evidence. *Commonwealth* v. *Fowler, supra.* Penetration may be inferred where the defendant forces the victim to "lick" his penis, and the court has cited approvingly to other jurisdictions in which penetration was inferred from the victim kissing the defendant's penis. See *Commonwealth* v. *King, supra* at 223 n.6, citing, e.g., *Hennington* v. *State*, 702 So. 2d 403, 408 (Miss. 1997) ("[P]roof of skin to skin contact between a person's mouth, lips, or tongue and the genitalia of a person's body, whether by kissing, licking, or sucking, is sufficient proof of 'sexual penetration' "). See also *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 17 (1980) (sufficient evidence of penetration where adult victim testified that defendant "put his mouth to — to my vagina" and that he "put his mouth down below").

Here, the victim testified, "I remember coming back into consciousness and there's a penis in my face." The defendant also admitted, in the tape-recorded interview played for the jury, that he placed his penis "on [the victim's] mouth." The defendant

---

[3]The defendant called one witness, his mother, who testified that the police utilized promises of nonprosecution, and threats to bring charges, in order to induce the defendant's tape-recorded statements.

added that at that point, he was lying down on his back and the victim was in front of him, between his legs. The jury were permitted to infer penetration from all the evidence. See *Commonwealth* v. *King, supra.* There was no error in denying the motion for a required finding of not guilty.

2. *Sufficiency of corroborative evidence of vaginal rape.* The defendant also argues that the judge should have granted his motion for a required finding of not guilty on count one (rape of a child by force by penis in genital opening), contending that there was no evidence to sustain a conviction other than the defendant's uncorroborated confession. We disagree. There was sufficient evidence from which to infer that illegal sexual conduct took place between the defendant and the victim which corroborates the defendant's confession.

When a motion for a required finding of not guilty is based on a claim of an insufficiently corroborated confession, a less demanding standard may apply than that of *Commonwealth* v. *Latimore,* 378 Mass. at 676-677. See *Commonwealth* v. *Villalta-Duarte,* 55 Mass. App. Ct. 821, 825 (2002). The main purpose of the rule requiring corroboration of extrajudicial confessions is to "guard against conviction for imaginary crimes." *Commonwealth* v. *Forde,* 392 Mass. 453, 458 (1984). Thus, when it comes to evaluating the sufficiency of corroborating evidence, the standard we apply requires "merely that 'there be some evidence, besides the confession, that the criminal act was committed by someone, that is that the crime was real and not imaginary.' " *Commonwealth* v. *Villalta-Duarte, supra,* quoting from *Commonwealth* v. *Landenburg,* 41 Mass. App. Ct. 23, 25 (1996).

Unlike *Latimore,* this standard does not require corroboration of each element of a crime, but does at a minimum require evidence that the crime was committed by someone. *Commonwealth* v. *Villalta-Duarte, supra.* "The corroboration required . . . may be quite minimal." *Id.* at 825-826, quoting from *Commonwealth* v. *Sineiro,* 432 Mass. 735, 745 n.11 (2000). The corroborative proof need not show that it was the defendant who actually committed the crime. *Commonwealth* v. *Forde, supra.*

For example, in *Villalta-Duarte,* the defendant confessed to sexually abusing the victim, a preverbal toddler, on two occasions while she was under the care of the defendant's wife, a daycare provider. 55 Mass. App. Ct. at 823-824. "[T]he evidence

showed that, at the same time that the defendant was present at his apartment during the day, the preverbal victim began to cry hysterically when brought to the apartment, developed an intractable diaper rash, and had scratches on her face." *Id.* at 826. When the victim was taken to a different daycare provider, these symptoms were initially repeated, but disappeared after a few weeks. *Ibid.* The court considered the special evidentiary problems involved in child sex abuse cases and the history and development of the corroboration rule in Massachusetts, concluding that the evidence was "sufficient to support an inference that something traumatic occurred in the apartment where the defendant lived," and therefore met the corroboration standard. *Ibid.* In the case at bar, we first observe that we deal with evidentiary problems of a related type, stemming from the victim's intoxication and her difficulty in recalling specifically what happened. However, unlike in *Villalta-Duarte*, where we considered whether the actions of the preverbal toddler supported an inference that the crimes occurred, here we have actual testimony from the victim that supports an inference that the crime occurred.

The defendant's taped confession and the victim's trial testimony gave similar accounts of the incidents of sexual conduct. Both described a series of three incidents. The order in which the events were recounted was the same in both the victim's testimony and the defendant's taped interview. The descriptions of the three incidents were also substantially similar. Specifically, both described the first incident as involving the defendant's penis and the victim's mouth. The victim testified that she "remember[ed] coming back into consciousness and there's a penis in my face." The defendant admitted, in his tape-recorded interview, that he "placed [his] penis on [the victim's] mouth." Consequently, the jury found the defendant committed oral rape, and we have upheld that conviction. The third incident, according to both the victim and the defendant, was sexual intercourse between the victim and a third party, Mike.

As to the second incident, both the victim and the defendant described it as involving vaginal penetration. The defendant admitted putting his penis inside the victim's vagina. The victim testified that "[t]he next thing I remember is just I'm waking up and my believing that someone was performing oral sex on

me." Asked to clarify, she stated she had had the "[f]eeling of his mouth in my private area . . . [m]y vagina." The difference between the defendant's and victim's descriptions of the second incident is, for corroboration purposes in this case, inconsequential.[4] Corroboration of a confession requires only *some evidence* that the crime was committed by someone and was not imaginary. See *Commonwealth* v. *Forde*, 392 Mass. at 458; *Commonwealth* v. *Villalta-Duarte*, 55 Mass. App. Ct. at 826. Here the statements of the victim taken together support an inference that there was a second incident and it involved vaginal penetration. Compare *ibid.* (sufficiently corroborative evidence "support[ed] an inference that something traumatic occurred in the [defendant's] apartment"). Contrast *Commonwealth* v. *Costello*, 411 Mass. 371, 375 (1991) (alleged victim testified that sexual acts did not occur, and his prior inconsistent statements were not admitted for their substance; thus, absent other evidence, defendant's two uncorroborated confessions could not be basis for conviction).

We conclude that the totality of the evidence aside from the defendant's confession, in light of the history and purpose of the corroboration rule in Massachusetts, was sufficient to support an inference that illegal sexual conduct did take place between the defendant and the victim and that the crime confessed to was not imaginary.

3. *Jury instructions.* It is true that the judge, in part, utilized some language recently disapproved in *Commonwealth* v. *Blache*, 450 Mass. 583, 592 (2008) (phrase "wholly insensible" used to describe level of intoxication required for incapacity "sounds archaic and confusing"), and *Commonwealth* v. *Urban*, 450 Mass. 608, 613 (2008) ("by listing intoxication and drunkenness alongside sleep, stupefaction, unconsciousness, and helplessness as potential bases for a finding of incapacity, the judge created the risk that jurors would equate these conditions, at least as they bear on the question of consent"), quoting from *Commonwealth* v. *Urban*, 67 Mass. App. Ct. 301, 306 (2006).

---

[4]The defendant has not argued that this difference should lead us to reverse due to prejudicial variance between the indictment and the proof at trial. See, e.g., *Commonwealth* v. *Geane*, 51 Mass. App. Ct. 149, 151-152 (2001). The defendant was convicted by the petit jury of the crime specified by the grand jury, and the issue here is simply whether the evidence of that crime before the former was legally sufficient in light of the corroboration requirement.

However, after considering the judge's lengthy instructions in their entirety, see *Commonwealth* v. *Glacken*, 451 Mass. 163, 168-169 (2008), we conclude that he conveyed effectively the jury's task of determining whether "because of the consumption of . . . alcohol[,] . . . the complainant was so impaired as to be incapable of consenting to intercourse." *Commonwealth* v. *Blache, supra* at 591-592. The judge made clear that "the jury must find not just that [the complainant] was intoxicated, but that her degree of intoxication was such that it rendered her incapable of consenting to intercourse," *Commonwealth* v. *Urban*, 450 Mass. at 613; and he communicated to the jury "that intoxication must be extreme before it can render a complainant incapable of consenting," *Commonwealth* v. *Blache, supra* at 592 n.14.

Finally, there is no merit to the defendant's claim that the judge's correction of a slip of the tongue improperly prohibited the jury from weighing the defendant's level of intoxication in their deliberations. The judge specifically tied his correction to the instruction during which he misspoke, which concerned only the victim's level of intoxication.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*