NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-396                                        Appeals Court

COMMONWEALTH  vs.  DARRYL S. GREEN.

No. 16-P-396.

Barnstable.     May 3, 2017. - September 27, 2017.

Present:  Green, Wolohojian, Massing, Shin, & Ditkoff, JJ.

Larceny.  Building.  Evidence, Admissions and confessions,
     Corroborative evidence.  Practice, Criminal, Admissions and
     confessions, Sentence.

Indictment found and returned in the Superior Court
Department on June 12, 2015.

The case was heard by Robert C. Rufo, J.

Eric W. Ruben for the defendant.
Elizabeth A. Sweeney, Assistant District Attorney, for the
Commonwealth.

DITKOFF, J.  The defendant appeals after his conviction at

a jury-waived trial of stealing in a building, G. L. c. 266,

§ 20, arising out of his theft of $240 from the home of his

recently murdered neighbors.  This case requires us to consider

the nature of the corroboration required to support a conviction

based on a defendant's confession and to discern the dividing line between property stolen from a building and property stolen from the custody of a person in the building.  Concluding that the confession was adequately corroborated and that the evidence made out the crime of stealing in a building, we affirm.[1]

1.  Background.  Sometime between the evening of June 11, 2013, and the early morning of June 12, 2013, Crystal Perry and Kristofer Williams were murdered in their home in Falmouth by persons unknown.  At approximately 1:30 A.M. on June 12, police found their bodies in the kitchen and living room, surrounded by blood.  The front door had been forced open and "[t]he house . . . had been . . . ransacked," but jewelry and a wallet remained in the house.  The defendant was a neighbor of the victims and suffered from a heroin addiction.

The defendant had been working as a mason's assistant for approximately two and one-half years.  His boss paid him in cash at the end of each day, and the defendant "never had cash the next day."  When the defendant's boss picked up the defendant the morning of June 12, the defendant showed him cash and said, "Let's go get this," meaning that they should purchase heroin together.  It was more money than the defendant had been paid the day before.  The defendant and his boss then purchased $200

---

[1] The defendant also challenges his sentence, which we discuss infra.

to $300 of heroin. The defendant's boss also noticed that the defendant was wearing rubber boots that day, as opposed to the work boots he had worn every other day.

The next day, and again four days after that, State police troopers interviewed the defendant. The defendant stated that he went into the victims' home "looking for drugs" and noticed that the house had been "ransacked." He found $100 on the floor near the entrance, and he took it. After going through Perry's wallet and checking at least some of both victims' pockets,[2] he went into a bedroom. There, the defendant found another $140 on the bed. The defendant took this money as well and spent all of the money on drugs. The defendant adamantly denied taking any jewelry.

2. Discussion. a. Corroboration of confession. The defendant challenges his conviction as impermissibly based on an uncorroborated confession. He argues that the Commonwealth presented no evidence, apart from the defendant's statements, that anything was taken from the home. Historically, Massachusetts permitted a conviction to be based solely on an extrajudicial confession. See, e.g., Commonwealth v. Killion, 194 Mass. 153, 155 (1907) ("[C]onfessions and admissions when freely and voluntarily made have ever been regarded as amongst

_____

[2] The defendant was inconsistent regarding whether he had searched only one or both of Williams's pockets. Police later found more than $300 in one of Williams's pockets.

the most effectual proofs that can be furnished").  In 1984, however, the Supreme Judicial Court held that "an uncorroborated confession is insufficient to prove guilt."  Commonwealth v. Forde, 392 Mass. 453, 457 (1984).  The court adopted this rule to "preclude[] the possibility of conviction of crime based solely on statements made by a person suffering a mental or emotional disturbance or some other aberration."  Ibid.

The corroboration required, though important, is "quite minimal."  Commonwealth v. Villalta-Duarte, 55 Mass. App. Ct. 821, 826 (2002), quoting from Commonwealth v. Sineiro, 432 Mass. 735, 745 n.11 (2000).  The requirement is "merely that 'there be some evidence, besides the confession, that the criminal act was committed by someone, that is that the crime was real and not imaginary.'"  Commonwealth v. Rodriguez, 76 Mass. App. Ct. 59, 63 (2009), quoting from Villalta-Duarte, supra at 825.  As the Supreme Judicial Court observed, the absence of corroboration should be rare as "[p]olice interrogations are not conducted at random, but often focus on persons who are already suspects, i.e., persons as to whom there is at least some basis for suspicion."  Commonwealth v. DiGiambattista, 442 Mass. 423, 432 (2004).

The corroboration requirement has been applied twice before to larcenies.  In Commonwealth v. Landenburg, 41 Mass. App. Ct. 23, 25 (1996), we found insufficient corroboration of a

defendant's confession to stealing merchandise where the only other evidence was the existence of the items described in the confession in the apartment of the defendant's girl friend. The fact that the presence of the items matched the defendant's statements that the stolen items were in the girl friend's apartment "corroborate[d] nothing beyond the fact of the defendant's familiarity with that residence and its contents." Ibid.

The Supreme Judicial Court, by contrast, found sufficient corroboration in Commonwealth v. Jackson, 428 Mass. 455 (1998). There, the defendant appeared in a friend's apartment "carrying a shotgun, money, cocaine, and jewelry" and told the friend that he (the defendant) had just committed a robbery. Id. at 457. The court found that the corroboration requirement "was satisfied by the testimony of [the friend], who said he saw tangible evidence of the robbery in the form of cocaine and cash," in light of the evidence that the defendant broke into the victim's apartment armed with a shotgun. Id. at 467. Because of this evidence, the absence of any other evidence that items were taken from the victim did not defeat the sufficiency of the evidence. Ibid.

Applying these teachings to the present case, we conclude that the defendant's confession was sufficiently corroborated. The house had been "ransacked," with "items strewn about the

house," a strong indication that items had been stolen. Cf. DiGiambattista, 442 Mass. at 431 (Corroboration need not show that the "defendant was the actual perpetrator of the crime"); Commonwealth v. Weaver, 474 Mass. 787, 791 (2016) (same). The defendant's description of the condition of the house and of the presence of a wallet and jewelry all matched police observations and were the sort of details that would not be known without familiarity with the crime scene. See Commonwealth v. Hubbard, 69 Mass. App. Ct. 232, 236 (2007) (Confession to unlawful possession of a firearm was sufficiently corroborated by evidence that the defendant was found outside the home where the firearm was found, that the firearm matched the defendant's description in his confession, and that shell casings confirmed the defendant's confession to firing the firearm). The defendant's possession of cash approximately matching the amount he stated he had stolen, where he had never in more than two years had cash the morning after being paid, is akin to the possession of robbery proceeds in Jackson. The use of that money to purchase heroin corroborated the defendant's stated reason for the theft as well as his report of where the money went. The defendant's use of different boots for the first time corroborated at least circumstantially the possibility that he had been walking through a bloody crime scene the previous evening. In sum, this corroboration was sufficient to convince

a trier of fact that "the crime was real and not imaginary," Rodriguez, 76 Mass. App. Ct. at 63, quoting from Villalta-Duarte, 55 Mass. App. Ct. at 825, and that the conviction was not "based solely on statements made by a person suffering a mental or emotional disturbance or some other aberration." Forde, 392 Mass. at 457.

b. _Stealing in a building_.  The defendant further challenges the sufficiency of the evidence under Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).  "In reviewing this claim, we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Oberle, 476 Mass. 539, 547 (2017).  "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'"  Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting from Commonwealth v. Woods, 466 Mass. 707, 713 (2014).

A larceny may become a felony punishable by up to five years in State prison, instead of a misdemeanor, by reason of the amount stolen, G. L. c. 266, § 30(1); by stealing from a person, G. L. c. 266, § 25(b); or by stealing in a building, G. L. c. 266, § 20.  In the two latter situations, the amount stolen is immaterial.  See Commonwealth v. Thomson, 14 Mass.

App. Ct. 902, 902 (1982); Commonwealth v. Graham, 62 Mass. App. Ct. 642, 647 (2004).  For the crime of stealing in a building, the statutory text of G. L. c. 266, § 20, requires merely that one "steals in a building, ship, vessel or railroad car."

The additional punishment for stealing in a building, regardless of the amount stolen, has been in effect since 1804, see St. 1804, c. 143, § 6, and the statute has existed in more or less its current form since 1851.  See St. 1851, c. 156, § 4. The Supreme Judicial Court, relying on the similar crime created in England in 1713, has construed the crime of stealing in a building to include two additional requirements that do not appear explicitly in the statutory text.  See Commonwealth v. Hartnett, 3 Gray 450, 451-453 (1855), citing St. 12 Anne, c. 7. First, the building in question must not belong to the defendant.  See Hartnett, 3 Gray at 452 (defendant not guilty of stealing in a building where her husband owned building). Second, relevant here, "the property stolen must be such as is usually under the protection of the house, deposited there for safe custody, and not things immediately under the eye or personal care of some one who happens to be in the house." Ibid.  This is not an onerous requirement; "[a]ll that is required is that the property be under the protection of the building 'rather than under the protection of the person or persons who are present.'"  Commonwealth v. Willard, 53 Mass.

App. Ct. 650, 655 (2002), quoting from Commonwealth v. Barklow, 52 Mass. App. Ct. 765, 767 (2001).

In applying that second requirement, the case law distinguishes between property under the personal protection of a person present in the building and property in the building, but not under such personal protection. Thus, property under the personal watch of a clerk or a storekeeper is not the proper object of stealing from a building. See Robinson v. Van Auken, 190 Mass. 161, 167 (1906) (property under direct control of owner); Commonwealth v. Sollivan, 40 Mass. App. Ct. 284, 286-287 (1996) (shoplifted property under protection of store employees). See also Commonwealth v. Cruz, 430 Mass. 182, 190 (1999) ("Sollivan stands for the proposition that the Legislature never intended that shoplifting . . . be prosecuted under G. L. c. 266, § 20"). Even if a clerk's attention is momentarily diverted, the fact that the property is under the clerk's watch would defeat a prosecution for stealing in a building. See Commonwealth v. Lester, 129 Mass. 101, 103 (1880).

Where, however, the property is in the building but not under the personal protection of a person therein, it may be the object of stealing in a building. To take an obvious example, property within a locked, closed store is a proper object of stealing in a building. Barklow, 52 Mass. App. Ct. at 766-767.

Similarly, property within an empty house is a proper object of stealing in a building, regardless of whether the doors have been forced open prior to, or during, the theft. Commonwealth v. Latney, 44 Mass. App. Ct. 423, 423-424 & n.1 (1998). To take a less obvious example, property in a house where the occupants are sleeping may be the object of stealing in a building. See Commonwealth v. Ronchetti, 333 Mass. 78, 79, 82 (1955); Willard, 53 Mass. App. Ct. at 655; Graham, 62 Mass. App. Ct. at 644, 647. Even a key in the pocket of clothes placed on a chair may be the object of stealing in a building once the owner falls asleep. Commonwealth v. Smith, 111 Mass. 429, 429-430 (1873). Similarly, the mere presence of a watchman would not negate the crime of stealing in a building if the property stolen "was not immediately or in any special sense under the care or eye of" the watchman. Commonwealth v. Nott, 135 Mass. 269, 272 (1883). The key question in each case is whether the property was under the personal protection of some person inside the building; otherwise, the property was under the protection of the building.

Here, the money stolen was not under the personal protection of any person inside the house. At least some of the money was taken from the bedroom; the victims were in the living room and kitchen. The money was on the floor and the bed, not under the watch of any person. Finally, of course, at the time

the money was stolen, no living person was in the home, and thus the property was "under the protection of the building 'rather than under the protection of the person or persons who are present.'" Willard, 53 Mass. App. Ct. at 655, quoting from Barklow, 52 Mass. App. Ct. at 767. The evidence was sufficient to prove the crime of stealing in a building. Cf. Commonwealth v. Haggerty, 400 Mass. 437, 438-439 & n.3 (1987) (property stolen after murder prosecuted as stealing in a building; stealing conviction not discussed on appeal); Commonwealth v. Leitzsey, 421 Mass. 694, 695-696 & n.1 (1996) (same); Commonwealth v. Bennett, 424 Mass. 64, 64-67 (1997) (same).

c. Victim impact statement. At sentencing, Perry's sister and daughter-in-law provided brief victim impact statements, both of which decried the defendant's failure to telephone the police upon discovering the murders.[3] The judge then sentenced the defendant to State prison for two years to two years and one day. The defendant argues that these statements were deeply prejudicial and require resentencing. As the defendant did not object, the claim is waived and we consider only whether, if we find error, there was a substantial risk of a miscarriage of justice. See Commonwealth v. Keon K., 70 Mass. App. Ct. 568, 573 (2007). There was no error.

---

[3] Both family members stated that the defendant was friends with Perry and was a frequent visitor to the property.

There is little to be gained, and much to be lost, from parsimony in hearing victim impact statements.  Accordingly, "no authority or precedent [exists] for the judge to subject [the] recitation [of impact statements] to prior redaction." Commonwealth v. Burdick, 45 Mass. App. Ct. 904, 905 (1998).  A sentencing judge may consider victim impact statements, see, e.g., Commonwealth v. Medina, 64 Mass. App. Ct. 708, 722 n.22 (2005), and is well able to disregard irrelevant or emotional content.  In the absence of any indication that the judge based the sentence on any improper factor, we will not disturb it.

Judgment affirmed.