NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1511

COMMONWEALTH

vs.

NEIL E. TOM, JR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Boston Municipal Court judge denied a motion to suppress filed by the defendant, Neil Tom, Jr., a jury found him guilty of driving with a suspended license.  He appeals from the denial of his motion to suppress and his conviction.  We affirm.

Background.  The motion judge's findings, as supplemented by testimony from the suppression hearing transcript, show that on October 3, 2020, at about 11:53 A.M., Officers Lorenzo Monzon and Peter Lekaditis patrolled the Mattapan and Dorchester section of Boston in a marked cruiser.  While driving in Dorchester along Norfolk Street, which had been the subject of speeding complaints from the community, Officer Monzon spotted a gray SUV missing a front registration plate approaching from the

opposite direction. Officer Monzon could "not remember whether he noticed the person inside the SUV." Because Massachusetts registration plates bearing green numbers do not have to be affixed to the front of vehicles, Officer Monzon made a U-turn and drove behind the SUV and verified that the plate numbers were red -- indicating a motor vehicle violation for the missing plate. Given the motor vehicle violation, Officer Monzon signaled the SUV to stop with lights and siren, and the SUV stopped in a bus lane. The officers walked up to the SUV, and Officer Monzon told the defendant that he stopped him due to the missing plate and asked for his license and registration. The defendant produced the registration and a Massachusetts identification card and said that his mother had the registration plate on a car she just purchased. He said his license had been suspended, and Officer Monzon verified the suspension through a computer check.

At Officer Monzon's request, the defendant exited the vehicle but was neither arrested nor handcuffed at this point. The officers decided to tow the vehicle given the obstruction of the bus lane, the defendant's license suspension, and the absence of anyone else who could drive. The officers arrested the defendant after finding a firearm and drugs in the SUV during an inventory search in preparation for towing. A complaint issued in connection with the incident.

2

The defendant filed a motion to suppress the evidence obtained from the motor vehicle stop and included an allegation that the stop was "motivated by race." In a supporting memorandum of law, the defendant claimed that race was a motivating factor because the motor vehicle offense was minor and rarely enforced, the vehicle (a BMW) was a "potential flag for discrimination," the stop was pretextual "where the police were fishing for evidence," and a statistical analysis of the officers' prior interactions with the public "raise[d] a strong inference of racial discrimination." The motion judge determined that the statistical analysis raised a reasonable inference of racial profiling and conducted an evidentiary hearing.

At the evidentiary hearing, the officers testified to the details of the stop as summarized above, and the defense presented statistical data as well as testimony from a college professor "specializ[ing] in racial profiling broadly" with particular "expertise in consumer racial profiling" or "discrimination against shoppers of color." The defendant presented several exhibits, including the professor's report on the racial and ethnic disparities in traffic citations issued by the officers involved in the stop. After considering the testimony and exhibits, the judge denied the motion to suppress in a memorandum of decision dated January 26, 2023.

3

The case proceeded to trial on August 17, 2023, with a different judge presiding, and a jury found the defendant guilty of driving with a suspended license and acquitted him of other charges in connection with the motor vehicle stop.

Discussion. 1. Equal protection. When claiming a traffic stop violated principles of equal protection, a defendant must initially establish through the totality of the circumstances "a reasonable inference that the officer's decision to initiate the stop was motivated by race or another protected class." Commonwealth v. Long, 485 Mass. 711, 713 (2020). The defendant "must produce evidence upon which a reasonable person could rely to infer that the officer discriminated on the basis of the defendant's race or membership in another protected class. Conclusive evidence is not needed." Id. at 723-24. If the defendant meets the initial burden of showing an inference of discrimination, then the burden shifts to the Commonwealth to rebut that inference, and the Commonwealth cannot merely rely on the validity of the traffic violation as the reason for the stop. Id. at 724, 726. The Commonwealth must "grapple with all of the reasonable inferences and all of the evidence that a defendant presented, and would have to prove that the stop was not racially motivated." Id. at 726. On appeal, we review "whether there was error in the judge's conclusion that the Commonwealth met its burden of rebutting an inference of

4

selective enforcement by articulating an adequate, race-neutral reason for the stop." Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 16 (2023).  We discern no error.

Denying the motion to suppress, the judge concluded, "Upon considering the totality of the circumstances, the Commonwealth proved by a preponderance of evidence, that this stop was not motivated by race.  In addition, the actions occurring after the initial stop, once they learned that the [d]efendant did not have a valid license and had pulled over in a bus lane, were not motivated by race."  The record before us shows that the judge based these conclusions on a careful review and weighing of the evidence presented.  Unpersuaded by the professor's testimony, the judge found the statistical analysis relied on benchmarking data for the entire city of Boston rather than the Mattapan and Dorchester neighborhoods being patrolled by the officers and failed to consider traffic on the road in question, the particular shift assignments of each officer, the number of verbal warnings made by the officers in contrast to the number of citations issued, and the effect, if any, that the pandemic shutdown played on skewing data collected on the number of motorists on the roads and the number of tickets issued. Additionally, the judge found that the professor's analysis did not account for evidence that the officers were specifically assigned to address traffic enforcement, witnessed an

5

infraction, and were not simply running random license plate checks. The judge further found that before initiating the stop, the officers confirmed the color of the numbers on the rear plate, and "the driver's race or skin color did not stand out." Moreover, the judge found that the events that followed the stop provided race-neutral reasons to search the SUV. See Robinson Van-Rader, 492 Mass. at 23 ("There may be substantial overlap between an inquiry into the reasonableness of a stop and the officer's motivation for stopping a suspect"). Giving due deference to the motion judge's evaluation of the weight of the evidence presented, we discern no clear error. Id. at 9.

We also discern no error from the motion judge's legal conclusions. To the extent that the defendant contends that the Commonwealth can only meet its burden by presenting statistical evidence of its own, we disagree. A judge must consider the "totality of the circumstances," Long, 485 Mass. at 724-725, which may include "the reasons the officer decided to target the defendant." Robinson-Van Rader, 492 Mass. at 20. Without relying on its own statistical evidence, the Commonwealth may still meet its burden by showing race-neutral reasons for "the sequence of events prior to the stop." Long, supra at 724. See, e.g., Robinson-Van Rader, supra at 23-24 (Commonwealth met burden without statistical evidence).

6

2. _Evidence of suspension_.  The defendant raises one error with respect to the trial.  He contends that the Commonwealth offered inadmissible hearsay to prove that the defendant's license had been suspended, and the defendant's admission on the roadside is insufficient to prove his guilt without corroboration.  Here, both officers testified that the defendant admitted his license had been suspended, a fact verified through a computer check.  Because the defendant lodged no objection to the testimony, we review only to determine whether an error created a substantial risk of a miscarriage of justice.  _Commonwealth_ v. _Keevan_, 400 Mass. 557, 562 (1987).  Here, we perceive no such risk.

We first address whether there was an error.  We agree with the defendant that the officers' testimony about the result of the computer check constituted inadmissible hearsay.  See _Commonwealth_ v. _Royal_, 89 Mass. App. Ct. 168, 169 (2016) (hearsay where officer testified that he "ran . . . the [defendant's driver] license number through the Registry of Motor Vehicles" and it "came with a status of suspended").  We disagree that his admission to the license suspension lacked corroboration that a crime had been committed because the police were percipient witnesses to the defendant driving the SUV.  See _Commonwealth_ v. _Costello_, 411 Mass. 371, 375 (1991)

7

(corroboration rule "does not require corroboration of each element of a crime").

Whether or not the admission of the evidence constituted an error, the record reveals that the defendant did not object to this testimony for evident strategic reasons. See Commonwealth v. Delong, 72 Mass. App. Ct. 42, 46 (2008), citing Commonwealth v. Beliard, 443 Mass. 79, 88-89 (2004). Through cross-examination of the officers, the defendant sought to distance himself from the firearm and drugs found in the SUV by highlighting his courtesy and cooperation with the officers and his candor about the license suspension. In closing argument, defense counsel emphasized this theme of candor and cooperation that would be logically inconsistent with someone who was aware of a firearm and drugs stashed in the SUV with the police standing nearby. See Commonwealth v. Pytou Heang, 458 Mass. 827, 852 (2011) ("Where inadmissible evidence is admitted because of a defendant's reasonable tactical decision, there is no substantial likelihood of a miscarriage of justice"). We also note that this strategy met with success as the jury acquitted the defendant of the possession offenses connected with the SUV. Thus, we discern no substantial risk of a miscarriage of justice.

Judgment affirmed.

8

                                        By the Court (Singh,
                                          D'Angelo & Hodgens, JJ.[1]),

                                        Paul Little

                                        Clerk

Entered:   August 18, 2025.

---

[1] The panelists are listed in order of seniority.